PEOPLE v. TUCKER.

1. CRIMINAL LAW—LARCENY—TRIAL—INSTRUCTIONS.
    In a prosecution for larceny from the person, the failure
    of the trial judge in an introductory paragraph, to fully
    define the elements of the crime, was not error, where,
    in the paragraph immediately following, the offense was
    fully and accurately defined.

2. SAME.
    The statement of the trial judge, in his charge to the
    jury, that the complaining witness was not on trial, held,
    not open to the objection that it amounted to a suggestion
    that the jury should give more consideration to his testi-
    mony than to that of defendant.

3. NEW TRIAL—WITHIN DISCRETION OF COURT.
    Granting or refusing a new trial is within the discretion
    of the court.

4. SAME—NEWLY-DISCOVERED EVIDENCE—ABUSE OF DISCRETION.
    The denial of a motion for a new trial on the ground of
    newly-discovered evidence was not an abuse of discretion,
    where it appeared that the proposed witness whose testi-
    mony was relied on as newly-discovered evidence was
    present when defendant was arrested, and on the trial de-
    fendant's counsel made no mention of the absence of any
    witness, nor asked for a continuance in order to secure
    the attendance of a witness.

5. CRIMINAL LAW—EVIDENCE—SUFFICIENCY.
    Evidence held, if believed, sufficient to justify a conviction.

6. SAME—CREDIBILITY OF WITNESSES.
    The credibility of the witnesses is for the jury.

Error to recorder's court of Detroit; Cotter (Thomas
M.), J.    Submitted April 13, 1923.    (Docket No.
108.)    Decided April 27, 1923.

Rose Tucker was convicted of larceny from the

On right of court to grant new trial on its own motion, see
note in 40 L. R. A. (N. S.) 291.
    As to credibility of witnesses as question for jury, see note
in 31 L. R. A. 396.

person, and sentenced to imprisonment for not less than 2 nor more than 5 years in the Detroit house of correction.   Affirmed.

*Lewis & Rowlette,* for appellant.

*Andrew B. Dougherty,* Attorney General, *Paul W. Voorhies,* Prosecuting Attorney, and *W. Gomer Krise,* Assistant Prosecuting Attorney, for the people.

STEERE, J.   Rose Tucker was tried before a jury in the recorder's court in the city of Detroit on January 31, 1922, and found guilty of the crime of larceny from the person.   She was sentenced to the Detroit house of correction for the statutory period of five years with a recommended minimum sentence to be served of two years.   The prosecution's uncontroverted testimony shows in outline that defendant accosted one Walter Kaufmann, the complaining witness, on Hastings street in the city of Detroit on the evening of December 20, 1921, and temptingly solicited him to accompany her to a room upstairs in a building near by.   He accepted her invitation and went upstairs with her to a room where two other girls appeared on the scene and following what apparently impressed him as a too familiar reception in which he was invited to spend some of his money he shortly withdrew. On reaching the street he discovered that his purse containing about $14 had disappeared.   He immediately went back upstairs and demanded it of defendant.   She denied having it and, in the interview which followed, one of the other girls in the room remarked that defendant had reported she had it and told her to return it, but she repeated her denial.   Kaufmann then left and started out to find an officer, going down Hastings street to Gratiot where he met and told his troubles to a policeman who accompanied him to the scene of his adventure.   The policeman testified

they there found defendant and another woman. He first asked defendant where that pocket-book was and she denied having it.    In the talk which followed she quarreled with the other woman who said defendant had it, and he found it lying on the floor behind a davenport.    He then arrested defendant and took her downstairs.    Of the transaction he said, "I did not arrest both of them because they were fighting, I had all I could do to take care of one.    *    *    *    I took her (defendant) out and went downstairs so she would-n't get hurt."    He identified the pocket-book pro- duced in court as the one he then found, and Kauf- mann identified it as his, claiming he had it in his pocket when defendant first accosted him on the street and in her familiarities "patted" his pockets.    The officer also testified that while he was in the room de- fendant raised a window and hollered out to a couple of girls out there, "Don't come up here any more, Emma has snitched on me for $20."    He later went back to the room for Emma but found she had gone. The officer and Kaufmann were the only witnesses for the people.

Kaufmann was a young man some 28 years of age whose testimony is somewhat weakened by inconsist- encies and pretensions that in his conduct he was en- tirely actuated by meritorious motives.    He testified that he accompanied the woman upstairs to the room with no impure purpose but because he did not want to be stopped by a woman and solicited on the street, which he "thought was against the rules of the city of Detroit and he wanted to help make a clean city" of it.    His story in outline was that when she met and solicited him on the street there was no one near them and when he missed his purse he remembered that she patted him on his overcoat pocket, in which he some- times carried it, and he was sure she got his purse out of there at that time; that when he first went into

the room upstairs with defendant the three women surrounded him but in that interview he so conducted himself that they didn't get within two feet of him and he was certain he did not lose it then because he "gave nobody a chance to get the money upstairs." He also recalled that as he followed defendant upstairs she stumbled and he heard her drop something, which he took to be her purse and which she immediately picked up again, that after his quick exit he discovered his pocket-book was gone when he reached the bottom of the stairs, when he at once went back and demanded it of defendant who denied having it, which one of the other girls disputed.

Defendant testified as a witness in her own behalf and stoutly denied having taken the pocket-book from Kaufmann or ever having had it, but said Emma was the one who took it and then told the officer where the pocket-book was and accused defendant of putting it there. Of the friction which followed she said: "Her (Emma) and the officer had some words and she threw a glass at me and he had to hold one of us." Under such an emergency it would seem to be for the jury to decide whether he held the right one. On cross-examination she admitted having been arrested and convicted so many times that she could not remember the number but stoutly asserted she had never been convicted of larceny.

After her conviction defendant's counsel moved for a new trial which was denied. Defendant's assignments of error are directed to the denial of her motion for a new trial, which was based on claimed newly-discovered evidence and the weakness of Kaufmann's testimony, in illustration of which the following excerpt is quoted:

"*Q.* You never at any time saw your purse on this girl, did you?
"*A.* No, sir.
"*Q.* And you never saw her take it from you?

"*A.* No, sir.

"*Q.* And if that purse was taken from behind the davenport you didn't know of your own knowledge who put it there?

"*A.* No, sir."

Also that the court erred in instructing the jury as follows:

"There are certain elements constituting every crime which must be proved, gentlemen, beyond all reasonable doubt, before a conviction may be had. The first element in the present charge is that it occurred on the 20th day of December, A. D. 1921. The people must prove that allegation beyond all reasonable doubt. In the second place they must show beyond all reasonable doubt that the next essential element has been proved, namely, that the crime, if any, occurred within the limits of the city of Detroit. * * *

"Now, it is for you to determine, gentlemen of the jury, from the evidence in this case, first of all, whether or not the defendant, Rose Tucker, on the 20th day of December A. D. 1921, within the city limits of the city of Detroit, committed the crime of larceny from the person. Now the person in this case is one William J. C. Kaufmann. The people allege that she took this money from his pocket, from his person. Now the complaining witness, gentlemen of the jury, is not on trial in this case. You are concerned only in the guilt or innocence of this defendant," etc.

Of the first excerpt from the charge, it is claimed that the court after attempting to define the elements of the crime committed error by failing to enumerate in that connection each and every element constituting it, and a later definition of the crime given by the court would not cure the error. An examination of the charge shows that the language quoted was but introductory to a paragraph immediately following, beginning "Now, as to the charge itself," which explained at length with unusual clarity and accurate definition the nature of the offense charged and all the elements constituting it.

Of the second quotation from the charge, it is said that the court pointing out to the jury the fact complaining witness was not on trial amounted to a suggestion that the jury should give more consideration to his testimony than that of defendant. We discover no inference to that effect in the charge taken as a whole, which carefully and impartially cautioned the jury as to their duties, explained fully the nature of the crime charged and the facts which they must find established beyond reasonable doubt before conviction could be had. The charge was eminently fair, impartial and plain. We find no error in the particulars assigned against the charge.

Of the court's alleged error in refusing to grant a new trial, it is sufficient to state that the proposed witness whose newly-discovered testimony was relied on was Julia Jones who defendant testified was present in the room at the time of the arrest and the affidavit furnished in support of the newly-discovered evidence states that the affiant "made every possible effort to locate the said Julia Jones prior to the trial of the said cause," but upon the trial counsel made no mention to the court of any witness whom they were unable to produce, nor asked a continuance in order to secure the attendance of a witness. Granting or refusing a new trial was within the discretion of the court. There was no abuse of the discretion.

There was abundance of direct evidence, if believed, to support and justify conviction. It was for the jury to pass upon the credibility of the witnesses. A careful examination of this record shows no ground for reversal.

The judgment will stand affirmed.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.