Viviano, J.
In this case, we consider the meaning of the phrase “from the person of another” under MCL 750.357, the larceny-from-the-person statute. Until 2004, Michigan’s robbery statute contained this phrase as well, so we also consider whether the 2004 amendment that removed this phrase from the robbery statute[1] altered the meaning of “from the person” in the larceny-from-the-person statute.
We hold that Michigan law requires a defendant to take property from the physical person or immediate presence of a victim to commit a larceny from the person. In rare cases, a taking outside of a victim’s immediate presence may satisfy the from-the-person *673 element only if a defendant or the defendant’s accomplices use force or threats to create distance between a victim and the victim’s property. Because defendant in this case did not take property from the person or immediate presence of the victim, or use force or threats to separate a victim from the victim’s property, we conclude that she did not commit a larceny from the person. Accordingly, we affirm the judgment of the Court of Appeals, which reversed her conviction of larceny from the person.
I. FACTS AND PROCEDURAL HISTORY
On May 31, 2010, Khai Krumbhaar was working as a plain clothes loss-prevention officer at a Macy’s in Southfield, Michigan. Through one of Macy’s closed-circuit television monitors, Krumbhaar observed defendant carrying two bags, which she held “very, very closely.” According to Krumbhaar, defendant “appeared extremely nervous” and was “darting her eyes” in the direction of sales associates and customers.
After watching defendant select a perfume set off a display case, Krumbhaar went to the sales floor to monitor her. Krumbhaar stayed far enough away to appear as if she were just another shopper, but stayed “fairly close” to defendant, at least close enough to observe her behavior. At times, she was within earshot of defendant. As Krumbhaar followed, she saw defendant “push[] the . . . [perfume] box down into her shopping bag.” After this, Krumbhaar “stayed back giving [defendant] some space,” until she saw defendant “walking very quickly” out of the store into the main mall area.[2] Outside the Macy’s store, Krumbhaar *674 confronted defendant, identified herself as a Macy’s loss-prevention officer, and asked defendant about the perfume set. Defendant began shouting and ran from Krumbhaar; Krumbhaar gave chase and captured defendant, who allegedly scratched and bit Krumbhaar as she tried to restrain defendant.
The prosecution charged defendant with unarmed robbery,[3] second-degree retail fraud,[4] and possession of marijuana.[5] On the first day of trial, the prosecution dismissed the latter two charges, although defendant objected to the dismissal of the second-degree retail-fraud charge.[6] The prosecution’s only witness was Krumbhaar, who testified to the above facts. After closing argument, and upon defendant’s request, the circuit court instructed the jury on the elements of larceny from the person.[7] The court explained that to find defendant guilty of larceny from the person, the jury would have to find that “property was taken from Khai Krumbhaar’s person or from Khai Krumbhaar’s immediate area of control or immediate presence.”[8] After deliberating, the jury acquitted defendant of unarmed robbery, but found her guilty of larceny from the person.
On review, the Court of Appeals reversed defendant’s conviction in a split published opinion. The majority *675 concluded that the prosecution presented no evidence that defendant had committed the larceny within Krumbhaar’s “area of immediate presence or control.”[9] The court noted that Krumbhaar “never testified that she was even within arm’s length of defendant”[10] or that “Krumbhaar was even close enough to defendant to have touched her or to have snatched the box from defendant’s hands.”[11] Accordingly, the court held that the prosecution had failed to prove a larceny “from the person” of Krumbhaar because “[p]roof of ‘stealing from the person of another’ requires more than vague proximity between the victim and the perpetrator.”[12]
Writing in dissent, Judge WHITBECK disagreed. He believed that Krumbhaar’s testimony that she was close enough to defendant to see her and hear her as she moved throughout the store was sufficient proof, as a matter of law, to establish that the taking occurred within her “immediate area of control or immediate presence.”[13]
We granted the prosecutor’s application for leave to appeal, directing the parties to address:
(1) whether the evidence was sufficient to prove beyond a reasonable doubt that the crime of larceny from a person, MCL 750.357, was committed within the “immediate area of control or immediate presence” of the loss prevention officer who witnessed the theft; (2) whether the 2004 amendment of the robbery statute, 2004 PA 128 (amending MCL 750.530), altered the definition of “presence” with respect to the larceny-from-the-person statute; and, if not *676 (3) whether the common-law definition of the phrase “from the person” remains consistent with the common-law definition of “presence. ”[14]
II. STANDARD OF REVIEW
We review de novo questions of statutory interpretation.[15] Our goal in interpreting a statute is to ascertain and “give effect to the intent of the Legislature.”[16] We enforce the clear and unambiguous language of the statute as written.[17] To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the prosecutor and determine “whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.”[18]
III. ANALYSIS
A. INTERPRETING “FROM THE PERSON”
Under MCL 750.357, a person who commits a larceny by stealing from “the person of another” is guilty of larceny from the person.[19] To determine whether there was sufficient evidence to establish this element, we must first determine the meaning of the statutory phrase “from the person.” The Legislature has instructed that any “technical words and phrases” that *677 “have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.”[20] And in the criminal-law context, common-law doctrine informs the meaning of a statute when the Legislature uses common-law terms.[21] Because the phrase “from the person” has an extensive history at common law, we now turn to that history to determine if the phrase has acquired a “peculiar and appropriate meaning.”
Common-law courts interpreted the phrase “from the person” differently in robbery cases and larceny-from-the-person cases. The first statute to separately criminalize larceny from the person was enacted in England in 1565.[22] The purpose of this law was to punish pickpockets, so courts construed it narrowly, requiring that a thief steal an object attached to or physically possessed by the victim to satisfy the “from the person” element of larceny from the person.[23] At the same time, jurists interpreted the phrase “from the person” more broadly in robbery cases. In those cases, courts interpreted “from the person” differently to account for circumstances in which robbers used force or threats of force in the commission of a theft. As Professor Rollin Perkins has explained, “One of the illustrations of robbery, given by the early writers, is the wrongful driving off of another’s horse or sheep while he, although present, is by violence or intimidation *678 prevented from interfering.”[24] Thus, in robbery cases, common-law courts and scholars interpreted “from the person” to include takings from a victim’s presence to account for the violence and intimidation that distinguishes robbery from larceny. In the words of Sir Edward Coke, writing about the crime of robbery in the 1700s, “that which is taken in [someone’s] presence, is in law taken from his person.”[25] Hence, at common law, the meaning of “from the person” depended on whether the crime at issue was robbery or larceny from the person.[26]
There is a split of authority in American jurisdictions with regard to whether larceny from a person requires a taking directly from the body of the victim or merely from the victim’s immediate presence. Some states followed the common-law approach to the offense of larceny from the person and required physical contact between the stolen object and the victim.[27] But this position is now a minority view. Courts in the majority of states that criminalize this offense have adopted the *679 view that “from the person” includes the area within a victim’s immediate presence.[28] Explaining the rationale for the evolution of the law in this area, the Supreme Court of Minnesota stated that the phrase “from the person” included the “immediate presence” of a victim because, in any taking from this area, “the rights of the person to inviolability would be encroached upon, and his personal security endangered, quite as much as if his watch or purse had been taken from his pocket.”[29]
Prior to 1970, Michigan appears to have taken the minority view, requiring an actual taking from the physical person of the victim.[30] For example, in People v Gadson, this Court reviewed the sufficiency of the evidence for the from-the-person element in a larceny-from-the-person case.[31] At trial, there was evidence *680 presented that the defendant had taken the victim’s wallet, but it was unclear whether the defendant had taken the wallet directly out of the victim’s pocket or after it had fallen out of his pocket during a scuffle. This Court held that there was insufficient evidence on the from-the-person element because there was reasonable doubt regarding whether the defendant took the wallet from the victim’s pocket. We emphasized that “[u]nder [MCL 750.357], an essential element of the larceny charged in the instant case ... is that it was accomplished by ‘stealing from the person of another.’ ”[32] Although not stated explicitly, the facts of the case make it clear that “physical possession” was the governing standard in Michigan law.
Two subsequent Court of Appeals cases took the same approach as Gadson and applied the physical-possession standard to the crime of larceny from the person. In People v Stevens, the defendant and his accomplice were convicted of robbery after they took money from a safe and from under a desk while they held a storeowner at gunpoint.[33] On appeal, the defendant claimed that the trial court erred by not instructing the jury on the lesser-included offense of larceny from the person, but the Court of Appeals disagreed. The court stated that there was “no evidence” for that offense because the “taking was from the safe and from the under the desk; there was no taking from the person of the victim.”[34] Similarly, in People v Johnson, the Court of Appeals reviewed a case in which the defendant stole property from a room in the victim’s home while the victim was in the bathroom.[35] The court *681 stated that this crime could not constitute a larceny from the person and openly rejected the immediate presence approach stating, “What is required is that the property in question actually be taken from the person of another; a taking of property from the immediate presence of the owner is insufficient.”[36] Hence, before 1970, Michigan courts had consistently identified Michigan as a physical-possession state.[37]
However, in the 1970 case of People v Gould,[38] this Court adopted the immediate presence approach, holding that “the taking of property in the possession and immediate presence of the [victims] . . . was sufficient to sustain a verdict against defendant Gould of larceny from the person.” Notably, this Court did not distinguish or overturn the physical-possession cases, nor did we address the text of Michigan’s larceny-from-the-person statute. But Gould’s holding represented a decided shift to the majority, immediate presence view of larceny from the person. Since Gould, this Court has interpreted the phrase “from the person of another” to include takings from the possession and immediate presence of the victim.[39]
*682 Despite this Court’s consistent application of the immediate presence test since Gould, the Court of Appeals has expanded the definition of “from the person.” For example, in People v Perkins, the court stated that the from-the-person element could be satisfied by a taking “from the person or from the person’s immediate area of control or immediate presence.”[40] However, the addition of “immediate area of control” as a independent category is an incorrect statement of the law and appears to stem solely from the model criminal jury instructions.[41] The Court of Appeals’ formulation erroneously suggests that the element can be satisfied by a taking from the victim’s immediate area of control, regardless of whether the taking was from the victim’s immediate presence. This is an expansion of the law because we have always interpreted Michigan’s larceny-from-the-person statute to require the actual presence of the victim at the time of the taking, absent circumstances in which defendants use force to create distance between victims and their property. Because this expansion is not grounded in statute or the decisions of this Court, we repudiate it. In keeping with this Court’s precedent, we adhere to a more restrictive definition of *683 “from the person” that requires the victim to be immediately present when the property is taken.[42]
In addition to declaring that Michigan is an immediate presence jurisdiction, Gould also applied a doctrine that had developed in robbery cases. In this and many other states, courts have had to address the recurring problem of robbers who claim that their convictions should he reversed due to a lack of proof on the from-the-person element, even though the robbers’ own use of force or threats was what created distance between victims and their property. In such circumstances, courts in nearly every American jurisdiction have invoked the rule that robbery defendants cannot negate the from-the-person element of their crimes by using force or threats to remove victims or keep them away from their property.[43] Instead, *684 courts treat victims as constructively present with the property, presuming that a victim would have retained possession of their property “if no[t] overcome by violence or prevented by fear, [from] retaining] his possession of it.”[44] For ease of reference, we will refer to this latter concept as “constructive presence.”
In Gould, this Court applied the constructive-presence exception in a larceny-from-the-person case for the first time in Michigan.[45] But a careful reading of the opinion shows that the court was applying this exception within its traditional limits, not expanding the meaning of “presence” for all larceny-from-the-person cases. The prosecutor had charged all the defendants in Gould with robbery, and no one disputed that the defendants had used force and threats of force (one co-defendant brandished a gun) to move the victims away from the cash register. The defendants forced a waitress to lie face-down on the floor in another room, making it impossible for her to be near the cash for which she was responsible. Thus, even though this Court affirmed defendant Gould’s conviction of larceny from the person, Gould is consistent with other precedent that prevented defendants from negating the from-the-person element of their crimes through the use of force.[46]
*685 In summary, Gould established two principles of law within the larceny-from-the-person context. First, it established Michigan as an immediate presence jurisdiction. Second, it established that the constructive-presence exception from robbery cases could apply in larceny-from-the-person cases, provided there was evidence that the defendant or an accomplice had used force or threats of force to keep a victim away from his or her property.[47]
B. THE EFFECT OF THE 2004 ROBBERY-STATUTE AMENDMENT
We next consider whether the 2004 amendments to Michigan’s robbery statute had any effect on the meaning of “from the person” in the larceny-from-the-person context. We conclude that they did not.
*686 Before 2004, the unarmed-robbery statute prohibited using force or violence to “steal and take from the person of another, or in his presence!.] ”[48] The 2004 amendments removed the phrase “from the person of another” from the robbery statute. As amended, the statute now prohibits anyone who is “in the course of committing a larceny of any money or other property” from using “force or violence against any person who is presentí.]”[49]
These changes were prompted by this Court’s decision in People v Randolph, in which we considered whether Michigan’s robbery statute permitted a transactional theory of robbery.[50] This approach allows a robbery conviction even where a defendant uses force for the first time after completing a taking, and we concluded that the robbery statute then in force did not permit this.[51] In response to our decision, however, the Legislature amended the robbery statute and codified the transactional theory.[52]
At issue in Randolph and the subsequent statutory changes was at what point in the commission of the crime force had to be used for a theft to constitute a robbery. The meaning of “from the person” in either robbery or larceny-from-the-person cases was not at issue in the exchange between the Legislature and this Court. Consequently, there is nothing to suggest that the Legislature intended to change the meaning of “from the person” in the larceny-from-the-person statute by removing this phrase from the robbery statute. *687 We conclude, therefore, that “from the person” in the larceny-from-the-person statute has the same meaning now as it did before the 2004 amendments.[53] The immediate presence test is still the governing standard in this area, and it is to the meaning of “immediate presence” that we now turn.
C. THE MEANING OF “IMMEDIATE PRESENCE”
Perhaps because Michigan was not an immediate presence jurisdiction until Gould, there is scant caselaw explaining the scope of the immediate presence standard. However, this standard has been the subject of legal commentary, and courts in many other states have applied the same standard in deciding their own larceny-from-the-person cases. Courts and commentators alike have emphasized that this standard requires immediate proximity between the object and the victim. As Professor Perkins has explained, “[I]f a man carrying a heavy suitcase sets it down for a moment to rest, and remains right there to guard it, the suitcase remains under the protection of his person.”[54] Even objects that are relatively close to a person are not considered to be in the person’s immediate presence unless they are immediately next to the person. Hence, the North Carolina Supreme Court ruled that there was *688 no larceny from the person where a thief stole a bank bag from a kiosk while the bank teller was 25 to 35 feet away.[55] Likewise, the Colorado Court of Appeals concluded that a person could not be convicted of larceny from the person after taking a purse out of a shopping cart because the victim was not actually holding or pushing the cart at the time of the taking.[56] In contrast, a defendant was properly convicted of larceny from the person in Virginia when he stood two feet away from a store employee but reached within inches of the victim to take cash out of a register.[57] Courts have also affirmed larceny-from-the-person convictions where a thief stole a pocketbook from trousers that the victim was using as a pillow,[58] and where a car driver’s billfold was taken off the seat immediately next to her.[59] From these cases a clear rule emerges: the immediate presence test can only be satisfied if the property was in immediate proximity to the victim at the time of the taking. In other words, the common-law meaning of “immediate presence” in the larceny-from-the-person context is consistent with the plain meaning of the word “immediate,” which means “having no object or space intervening, nearest or next.”[60]
*689 Even when viewed in the light most favorable to the prosecutor, the facts of this case do not satisfy the immediate presence standard, which includes actual possession, or the constructive-presence exception. In this case, the loss-prevention officer was not in possession of the property at the time that it was taken. The record established only that she was “fairly close” to defendant in Macy’s. At the moment defendant actually completed the taking by putting the perfume set into her bag, the loss-prevention officer was following defendant through the store while pretending to be another shopper.[61] Even though the loss-prevention officer remained close enough to observe defendant’s behavior and was also at times within earshot of her, there was ample “intervening space” between the alleged victim and the property that defendant took, such that defendant did not take the perfume set from the immediate presence of the victim.
Notwithstanding the intervening space between the alleged victim and the stolen property, the jury still convicted defendant of larceny from the person. This conviction was arguably reasonable under the current jury instruction, CJI2d 23.3, which contains the phrase “immediate area of control.” The jury may have interpreted this phrase to mean that a larceny from the person could occur in an area that the victim was responsible for, even if the taking was not from the victim’s immediate presence. However, as mentioned above, a finding that the taking occurred within the victim’s “immediate area of control” does not satisfy *690 the from-the-person element absent a finding that the taking was from the victim’s person or immediate presence.
While the Court of Appeals described the immediate presence standard using the colloquial phrase “personal space,”[62] it correctly applied the immediate presence standard. Thus, the Court of Appeals rightly concluded that because defendant did not take any property from the loss-prevention officer’s immediate presence, she did not commit a larceny from the person. And although the prosecutor alleged that defendant used force to retain possession of the perfume set after she had stolen it, there was no evidence that defendant used force or threats to separate the victim from the perfume set before it was taken. Consequently, the constructive-presence doctrine does not apply in this case. For these reasons, we affirm the judgment of the Court of Appeals, which reversed defendant’s conviction.
Finally, there is a related common-law doctrine that provides additional support for our conclusion. At common law, courts treated the taking of merchandise off a shelf or rack as a larceny from a building, not larceny from a person.[63] Such takings were considered larcenies from a person only if an employee had been exercising direct control over the specific property at the time of the taking. As Professor Perkins explains,
Goods on open shelves, goods standing on the floor, goods arranged on tables or counters are normally treated as within the protection of the building. One distinction, however, is to be noted. If a jewel or other valuable thing, normally kept out of open reach of customers, is placed on the counter under the eye of the storekeeper or clerk while it is being examined by a customer, this is regarded as *691 under the personal protection of the storekeeper or clerk at the moment, rather than under the protection of the building; whereas articles placed on the counter with the expectation that they will remain there all day, unless purchased, are under the protection of the building][64]
Here, the dissent asserts that the loss-prevention officer had “personal protection and rightful control” over the gift box because she was “[a]n employee of Macy’s responsible for preventing thefts of Macy’s store items.”[65] While we agree that a loss-prevention officer has a specific duty to prevent theft, that duty, standing alone, does not bring the gift box within the loss-prevention officer’s immediate presence. For the perfume set to be under her personal protection for the purposes of a larceny from her person, she would have had to have taken possession of the merchandise at issue before defendant pilfered it.[66] Without this act of dominion, the perfume set remained only under the “protection” of the store. As a result, defendant did not take any property from the person of the loss-prevention officer. This provides additional support for our conclusion that the Court of Appeals properly reversed defendant’s conviction.
V THE DISSENT’S RISK-OF-ALTERCATION TEST
In explaining its interpretation of the law, the dissent describes its test for whether a taking occurs in the immediate presence of a victim as whether “a taking of *692 such property triggers a substantial risk that a violent altercation will occur.”[67] The most significant problem with this new test is that it expands the prohibited taking zone well beyond a person’s immediate presence and into a large and undefined area.[68] The limits of this new prohibited taking zone are difficult to discern and likely arbitrary. A victim could plausibly observe a thief from 100 feet away and yet still have a chance of catching up to and confronting the thief if the victim chose to do so. Hence, even a taking at this distance could trigger “a substantial risk that a violent altercation will occur.” Because the typical store theft occurs well within this range, it would seem that, under the dissent’s proposed standard, most routine shoplifting incidents could be charged as larcenies from the person. That result conflicts with the established limits of the immediate presence standard.[69]
VI. CONCLUSION
Michigan law requires a taking from the person or immediate presence of a victim to satisfy the from-the-person element for the crime of larceny from the person. This standard is satisfied when the defendant takes property that is in the physical possession of a *693 victim or property that is in immediate proximity to a victim when the taking occurs. Only in the rare larceny-from-the-person case in which the constructive-presence exception applies may a taking outside of a victim’s immediate presence satisfy the from-the-person element. The 2004 amendments to Michigan’s robbery statute did not change these established requirements.
In this case, there was no evidence that defendant took property that was in the physical possession of or immediate proximity to the loss-prevention officer, and there was no evidence that defendant used force or threats to distance the loss-prevention officer from the property at the time of the taking. As a result, there was insufficient evidence that defendant took property “from the person” of the loss-prevention officer. The Court of Appeals properly reversed defendant’s conviction, so we affirm the judgment of Court of Appeals.
Young, C.J., and Cavanagh and McCormack, JJ., concurred with Viviano, J.

 See MCL 750.530, as amended by 2004 PA 128.

 At trial, Krumbhaar explained that Macy’s policy prohibits its loss-prevention officers from confronting suspected shoplifters until after they have left the store.

 MCL 750.530.

 MCL 750.356d.

 MCL 333.7403(2)(d).

 Defendant argued that the retail-fraud charge was “more indicative of what happened on the date in question[.]”

 The circuit court instructed the jury on the elements of larceny from the person on the theory that this offense was a lesser included offense of robbery. As we will explain below, the court erred by giving this instruction.

 (Emphasis added.) This instruction was consistent with CJI2d 23.3, the model jury instruction for this offense.

 People v Smith-Anthony, 296 Mich App 413, 418; 821 NW2d 172 (2012).

 Id. at 419.

 Id. at 419 n 2.

 Id. at 420 (citation omitted).

 Id. at 432 (Whitbeck, J., dissenting).

 People v Smith-Anthony, 493 Mich 879 (2012).

 People v Stone, 463 Mich 558, 561; 621 NW2d 702 (2001).

 Id. at 562.

 Id.

 People v Tennyson, 487 Mich 730, 735; 790 NW2d 354 (2010) (citation and quotation omitted).

 See MCL 750.357 (“Any person who shall commit the offense of larceny by stealing from the person of another shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years.” [emphasis added]).

 MCL 8.3a; see also Const 1963, art 3, §7 (“The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed.”).

 See People v McDonald, 409 Mich 110, 117; 293 NW2d 588 (1980).

 Anno: What Constitutes Larceny “From a Person,” 74 ALR3d 271, 276; 8 Eliz c 4, § 2 (1565).

 74 ALR3d 271, 276-277.

 Perkins & Boyce, Criminal Law (3d ed, 1982), p 346, citing 3 Coke, The Third Part of the Institutes of the Laws of England (1797), p 68; 1 Hale, The History of the Pleas of the Crowns, p *533; 1 Hawkins, A Treatise of Pleas of the Crown, c 34, § 5 (6th ed).

 3 Coke, p 69.

 We disagree with the premise of the third question on which we granted leave to appeal in this case. In the larceny-from-the-person context, the phrase “from the person” had a more restrictive meaning at common law than “presence.”

 See, e.g., People v McElroy, 116 Cal 583, 586; 48 P 718 (1897) (holding that property “shall at the time [that it was taken] be in some way actually upon or attached to the person, or carried or held in actual physical possession”); Terral v State, 84 Nev 412, 413-414; 442 P2d 465 (1968) (citation omitted) (explaining that “from the beginning [larceny from the person] required ‘an actual taking from the person; a taking from his presence was not sufficient as it was in robbery’ ”); State v Lucero, 28 Utah 2d 61, 63; 498 P2d 350 (1972) (following Terral); Wilder v State, 30 Ala App 107, 108; 1 So 2d 317 (1941) (following McElroy).

 See, e.g., People v Pierce, 226 Ill 2d 470, 483; 877 NE2d 408 (2007) (recognizing the split of authority on this issue and adopting the majority view); State v Kobylasz, 242 Iowa 1161, 1166-1168; 47 NW2d 167 (1951) (recognizing that some courts require that the property be “taken off the person,” citing McElroy and Wilder, but declining to construe the larceny-from-the-person statute so narrowly and instead applying the immediate presence standard); State v Jones, 499 SW2d 236,238-240 (Mo Ct App, 1973) (following Kobylasz); Banks v State, 74 Ga App 449, 451-452; 40 SE2d 103 (1946) (construing the phrase “from the person of another” as used in both the robbery and larceny-from-the-person statutes of that state and holding that “it is unnecessary that the taking of the property should be directly from one’s person, but it is sufficient if it be taken while in his possession and immediate presence”) (emphasis added) (quotation marks and citation omitted).

 State v Eno, 8 Minn 220, 223 (1863).

 The dissent disagrees with this point and relies heavily on the case of People v Covelesky, 217 Mich 90; 185 NW 770 (1921), superseded by statute as recognized by People v Williams, 491 Mich 164, 171-173; 814 NW2d 270 (2012), to explain its interpretation of “from the person.” It is worth noting that Covelesky, like most of the authority cited by the dissent, involved a robbery. Moreover, the facts of Covelesky are significantly different from the larceny-from-the-person cases discussed in this opinion because that case involved a home invasion with a high degree of violence.

 People v Gadson, 348 Mich 307, 309-310; 83 NW2d 227 (1957).

 Id.

 People v Stevens, 9 Mich App 531, 532; 157 NW2d 495 (1968).

 Id. at 534 (emphasis added).

 People v Johnson, 25 Mich App 258, 264; 181 NW2d 425 (1970).

 Id.

 We have found no other cases before this Court’s opinion in People v Gould, 384 Mich 71, 80; 179 NW2d 617 (1970), that discuss the appropriate taking standard in the larceny-from-the-person context. There are cases in which Michigan courts have applied the larceny-from-the-person statute to situations in which the victim was in physical possession of his or her property. See, e.g., People v Tucker, 222 Mich 564, 569; 193 NW 206 (1923); People v Newsom, 25 Mich App 371, 374; 181 NW2d 551 (1970). In contrast, we can find no Michigan cases applying the immediate presence standard in the larceny-from-the-person context — or even using the phrase — prior to the Court of Appeals opinion in People v Gould, 15 Mich App 83, 87; 166 NW2d 530 (1968), afFd in part and rev’d in part 384 Mich 71 (1970), where it was used for the first time and rejected as the proper standard.

 Gould, 384 Mich at 80.

 See People v Perkins, 473 Mich 626, 633; 703 NW2d 448 (2005); People v Beach, 429 Mich 450, 484 n 17; 418 NW2d 861 (1988); People v *682 Chamblis, 395 Mich 408, 425; 236 NW2d 473 (1975), overruled in part on other grounds People v Cornell, 466 Mich 335, 357; 646 NW2d 127 (2002) (stating, in dicta, that “[w]e are committed to the view that... larceny from the person embraces the taking of property in the possession and immediate presence of the victim”) (emphasis added).

 People v Perkins, 262 Mich App 267, 272; 686 NW2d 237 (2004), aff’d 473 Mich 626 (2005) (citing CJI2d 23.3 and People v Wallace, 173 Mich App 420, 426; 434 NW2d 422 (1988) in turn quoting CJI 23:2:01) (emphasis added).

 Beyond its citation to CJI2d 23.3, the Court of Appeals in Perkins cited to Wallace. However, Wallace provides no further guidance because it cites solely to CJI2d 23.3, which “dotes] not have the official sanction of this Court.” People v Petrella, 424 Mich 221, 277; 380 NW2d 11 (1985).

 See Perkins, 473 Mich at 633 (“In order to commit a larceny from the person, the defendant must steal something from a person in that person’s presence.”); Gould, 384 Mich at 80 (“[I]t is sufficient if the property be taken from the presence of the victim ... [that is] within his area of control.”) (Citations and quotation marks omitted).

 See, e.g., United States v Kimble, 178 F3d 1163, 1168 (CA 11, 1999) (“person or presence” standard in the federal carjacking statute, 18 USCA § 2119, deemed similar to standard for robbery, was met here, as had the car owner “not been in fear for his safety, he could have reached the car and prevented its taking”); United States v Lake, 150 F3d 269, 273 (CA 3, 1998) (rational jury could have found that the car was taken from the victim’s presence where the victim “could have prevented the taking of her car if she had not been fearful that [the defendant] would shoot or otherwise harm her”); People v Blake, 144 Ill 2d 314, 320-321; 579 NE2d 861 (1991) (presence standard satisfied where the victims were immobilized on second floor of residence while property taken from first floor); Commonwealth v Stewart, 365 Mass 99, 108; 309 NE2d 470 (1974) (defendant properly convicted of robbing the victim by taking money from a safe where the victim could have prevented the taking if not intimidated by robber); State v Calhoun, 72 Iowa 432, 436; 34 NW 194 (1887) (affirming that “presence” standard was satisfied where the defendant took money and watch from the victim after binding victim in one room of her house and extorting from her the location of the money); Towner v State, 812 So2d 1109, 1113-1114 (Miss Ct App, 2002) (“presence” element satisfied where the defendant ordered two women, one *684 employee and one co-owner, into restaurant’s office at gunpoint and took money from the office, proximity and control existed as to each woman, and thus constituted two robberies); Price v Commonwealth, 59 Va App 764, 769-770; 722 SE2d 653 (2012) (concluding that “the items taken from [the victim’s] purse located in another room of the trailer were close enough to her and sufficiently under her control that, had she not been subjected to violence and intimidation by the intruders, she could have attempted to prevent the taking of her personal items”).

 Commonwealth v Homer, 235 Mass 526, 533; 127 NE 517 (1920).

 Gould, 384 Mich at 80.

 In Gould, this Court’s holding has caused some confusion regarding its reach — perhaps best demonstrated by the fact that the dissent in this *685 case and the Court of Appeals majority both believe it supports their view. We take this opportunity to clarify its holding, for which the Court appears to have given alternative rationales. To the extent the larceny supporting defendant Gould’s conviction was the taking of money directly from the wallet of the customer present in the restaurant at the time of the holdup, there was an actual taking from the person. On the other hand, to the extent the larceny was the taking of money from the cash register and cigar box, after the waitress was forcibly sequestered in another room, the constructive-presence exception was applicable. We recognize that the former point could be interpreted as rendering the remainder of Gould as dicta. However, even if dicta, its holding is now well settled, and its continued validity is not at issue.

 We do not believe that Gould should be read as a wholesale importation of robbery doctrine into larceny-from-the-person law, such that the presence element for each offense is coextensive. As noted, Gould applied the constructive-presence doctrine in the larceny-from-the-person context. Although it is not entirely clear how a doctrine that expands the prohibited taking zone when force or threats are present can logically be applied to a crime that does not require force or threats as an element, it is clear that Gould established the outer limit of the taking zone in larceny-from-the-person cases. However, the dissent’s interpretation, which expands the prohibited taking zone even in the absence of force or threats, goes well beyond the standard in Gould or any other case.

 MCL 750.530, 1931 PA 328 (emphasis added).

 MKL 750.530, as amended by 2004 PA 128 (emphasis added).

 People v Randolph, 466 Mich 532, 546; 648 NW2d 164 (2002), superseded by statute as recognized by Williams, 491 Mich at 171-173.

 Id.

 See Williams, 491 Mich at 184.

 However, the 2004 amendments have affected the relationship between robbery and larceny from the person. We have previously held that larceny from the person is a necessarily lesser included offense of robbery. Beach, 429 Mich at 484. “Necessarily included lesser offenses are offenses in which the elements of the lesser offense are completely subsumed in the greater offense.” People v Nickens, 470 Mich 622, 626; 685 NW2d 657 (2004). Under MCL 750.530(2), a defendant who uses force in fleeing a larceny is guilty of robbery. Therefore, robbery does not require that the taking have been made in the “immediate presence” of the victim. As a result, larceny-from-the-person is no longer a necessarily included lesser offense of robbery.

 Perkins & Boyce, p 342 (emphasis added).

 State v Barnes, 345 NC 146, 150-151; 478 SE2d 188 (1996).

 People v Smith, 121 P3d 243, 247-248 (Colo App, 2005).

 Garland v Commonwealth, 18 Va App 706, 710; 446 SE2d 628 (1994).

 Banks, 74 Ga App at 450-452.

 Kobylasz, 242 Iowa at 1166-1168.

 Random House Webster’s Unabridged Dictionary (1998). The dissent interprets our opinion as saying that “only in the rare instance that property is taken by ‘use of force or threats of force to create distance between a victim and the victim’s property’ might property that is otherwise not affixed to the victim constitute a taking ‘from the person.’ ” Post at 702. Later on, the dissent states that we are essentially “equating ‘immediate presence’ with ‘attached to the person.’ ” Post at 702 n 29. This is, not true. As we ejqjlained, the immediate presence test is satisfied when a defendant takes “property from the physical person or *689 immediate presence of a victim.” (Emphasis added.) Physical attachment is sufficient, hut not necessary to satisfy the immediate presence test.

 In a larceny case, the crime is completed when the taking occurs. Randolph, 466 Mich at 543.

 Smith-Anthony, 296 Mich App at 418.

 See Perkins & Boyce, pp 340-341.

 Id.

 Post at 709.

 See Perkins & Boyce, p 340 (internal citation omitted) (“If property is in the pocket of some person within the building, or under his personal care at the moment in some other way, it is not regarded as within the protection of the building.. . [and t]he stealing of such property ... [is a] larceny from the person.”).

 Post at 711.

 Id. While this Court has stated before that “larceny from the person involves a substantial risk of physical force,” Perkins, 473 Mich at 634, that statement was merely an explanation of the Legislature’s purpose in enacting the statute, not a description of the prohibited taking zone.

 Although the dissent tries to show that its test has limits by listing “[a] few non-exhaustive examples” that do not create a substantial risk of altercation, post at 710, it is difficult to discern how these examples fail to satisfy the dissent’s own test. For example, it seems there would still be a “risk of altercation” in the case of “a security guard who observes [a theft] via closed-circuit monitor,” so long as there was still a chance that the security guard could leave the monitor and confront the thief.