*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DERRICK NATHANIAL MOSBY,

        Defendant-Appellant.

UNPUBLISHED
June 9, 2022

No. 355252
Hillsdale Circuit Court
LC No. 20-444703-FH

Before: BORRELLO, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Defendant appeals as of right his conviction following a jury trial of one count of assaulting, resisting, or opposing a police officer, MCL 750.81d(1). The trial court sentenced defendant to 16 to 24 months' imprisonment. We affirm.

## I. FACTS

This case stems from the execution of a search warrant at a residence. Ten or eleven law enforcement officers executed the warrant in the morning hours, while it was still dark outside. A camper trailer was parked on the side of the driveway at the residence. A light was on inside the camper, so the officers decided to begin the search warrant execution at the camper.

The officers approached the camper in single file behind one officer who held a 2-by-4-foot ballistic shield with police marking. Some of the officers wore their standard department uniforms, while those a part of a Michigan State Police (MSP) Special Investigative Task Force wore military-style fatigues and vests with police markings. As the officers approached, the camper door opened, and defendant stood in the doorway. Defendant testified that he opened the door because he heard what sounded like a stick or twig breaking, as well as rustling noises. The officers shined lights on defendant as he stood in the doorway. Three or four officers began yelling commands to defendant, such as, "State Police, search warrant," and to keep his hands up and step out of the camper. Defendant stated that he could only hear multiple people yelling at once and, because of that, he could not decipher what they were saying. He also testified that he could not see who was yelling because of the lights shining on his face. Defendant said that this yelling scared him, so he closed and locked the camper door. Defendant testified that he reopened the door moments later because, by that time, he could hear the words "State Police, search warrant"

-1-

from outside.

Three officers testified that defendant did not comply with the orders to put up his hands or to exit the camper, once the door was reopened. When defendant did not step out of the camper on his own, Officer Adryan Robinson attempted to pull defendant out by grabbing onto defendant's belt. Defendant prevented being pulled by putting his hands up in the doorway. Officer Robinson and Detective Lieutenant Aaron Hunt said that they believed that defendant did so to prevent being removed from the camper, though defendant stated that he was merely bracing himself from falling out of the door and onto the ground. Two other officers, including Detective Hunt, had to assist with defendant's removal by grabbing defendant's shoulders and the back of his neck.

Once defendant was out of the camper, he was ordered to put his hands behind his back. When defendant did not, the officers took defendant to the ground. Defendant's arms were tucked underneath his chest. MSP Trooper Nicholas Reaume put one of his knees on the back of defendant's legs in order to stop defendant from kicking. Defendant did not bring his arms out from underneath him on his own when ordered, so Detective Hunt and one other officer had to pull them out. Defendant argued that he could not bring his arms out on his own because officers prevented it by being on top of him. Once defendant's arms were brought out from underneath him, however, defendant continued to pull and tense them as officers tried to apply handcuffs to his wrists. Defendant became compliant after the handcuffs were applied.

## II. ANALYSIS

## A. INSUFFICIENT EVIDENCE

Defendant argues on appeal that the evidence presented at the jury trial was insufficient to prove beyond a reasonable doubt that he knew that the people who approached the camper were officers, and that he did not willingly disobey commands to bring his arms out from underneath him.

We review challenges regarding sufficiency of the evidence de novo. *People v Evans*, 335 Mich App 76, 85; 966 NW2d 402 (2020). On review of an evidence sufficiency challenge, the Court must view the evidence "in the light most favorable to the prosecutor" to determine "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013) (quotation marks and citation omitted). Direct and circumstantial evidence may be used to prove an element of a charge, as can "reasonable inferences arising from that evidence." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (quotation marks and citation omitted).

Defendant was convicted of one count of assaulting, resisting, or obstructing a police officer under MCL 750.81d(1). This charge required the prosecutor to prove that "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer," that "(2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties" and (3) "that the officers' actions were lawful." *People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014) (quotation marks and citations omitted).

Defendant does not contest that the members of the search warrant execution team were in

fact law enforcement officers, nor that the officers were lawfully executing a search warrant. Rather, defendant argues that (1) the evidence presented did not prove beyond a reasonable doubt that he knew or had reason to know that the people who approached the camper were police officers, and (2) he did not willingly disobey commands to bring his arms out from underneath him.

Even assuming that defendant could not tell initially that the people who approached the camper, shined lights on him, and yelled commands were officers, what defendant ignores is that a rational jury could also infer from the evidence that defendant knew that the people outside were officers once the camper door was reopened; yet, he still resisted their commands. Defendant testified that he stated just before the door opened: "Oh, State Police . . . why didn't you say so." Defendant did not claim that he lacked knowledge that it was officers who then ordered him to put up his hands and come out of the camper or who had to pull defendant out of the camper. Defendant also did not argue that he lacked knowledge that it was officers who told him to put his hands behind his back, ordered defendant to bring his arms out from underneath him once he was taken to the ground, or had to struggle with defendant to get handcuffs on him even after his arms were free. Yet, Trooper Reaume testified that defendant did not comply willingly with any of these commands at any point until defendant was secured in handcuffs. Looking at all the evidence in the light most favorable to the prosecutor, this testimony is sufficient to establish a conviction of assaulting, resisting, or opposing a police officer.

Defendant next asserts that he was unable to comply with the commands to bring his arms out from underneath him. Specifically, defendant argues that three officers were on top of him, pinning his arms underneath him, such that defendant could not willingly comply with orders to pull them out. Trooper Reaume stated that he did kneel on defendant's legs to prevent defendant from kicking. Detective Hunt, who was one of two officers trying to pull defendant's arms out when defendant did not do so on his own, stated that he was positioned next to defendant rather than on top of defendant. The surveillance video corroborates the officers' testimonies, as one officer can be seen seated where defendant's legs had been visible, and another officer remained kneeling at defendant's right side. Trooper Reaume stated that even after defendant's arms were free, defendant continued to pull his arms away and tensed them while Trooper Reaume tried to place handcuffs on him. Again, this evidence is sufficient to allow a rational jury to reach a verdict of guilt, particularly when looking at the facts in the light most favorable to the prosecutor. See *Smith-Anthony*, 494 Mich at 676; *Carines*, 460 Mich at 757.

## B. GREAT WEIGHT OF THE EVIDENCE

In the alternative, defendant argues that the verdict was against the great weight of the evidence and that the trial court abused its discretion by denying defendant's motion for a new trial.

We review a trial court's decision to grant or deny a motion for a new trial for an abuse of discretion. *People v Lemmon*, 456 Mich 625, 648 n 27; 576 NW2d 129 (1998). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). As long as the trial court acted within a reasonable or principled outcome, we may defer to the trial court's judgment. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

-3-

"A verdict is against the great weight of the evidence and a new trial should be granted when the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v Solloway*, 316 Mich App 174, 182-183; 891 NW2d 255 (2016) (quotation marks and citations omitted). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction or preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred . . ." *Lemmon*, 456 Mich at 641 (quotation marks and citations omitted; alteration in original). Conflicting testimony alone does not generally present sufficient grounds for granting a new trial. *Id*. at 643. Narrow exceptions to this general rule include when testimony is "patently incredible or defies physical realities," is "so inherently implausible that it could not be believed by a reasonable juror," or witness testimony is "seriously impeached and the case marked by uncertainties and discrepancies." *Id*. at 643-644 (quotation marks and citations omitted).

The trial court applied *Lemmon* when it concluded that the jury's verdict was not against the great weight of the evidence. In support of its decision, the trial court stated:

> We had trooper Robinson testify to the commands that were given. Get on the ground. Come outside. Once the door opened, come out. Let me see your hands. Trooper Reaume testified, police, search warrant, were things that were— were called out. Detective Hunt, State Police, search warrant. We had you—we need you to step out of the RV.

> Mr. Mosby saw and heard the police and went inside and locked the door. He had to be pulled out. Once he was out, his hands had to be pulled out from under him, he was kicking, and the evidence is clear to support the jury verdict.

The evidence did not preponderate heavily against the verdict, nor was it fraught with discrepancies; rather, as stated earlier, the evidence tended to show multiple instances of the defendant resisting compliance with officers' lawful commands. Although some testimony conflicted, none was so incredible or implausible that a reasonable juror could not believe it. Further, the jury displayed an effort to resolve any uncertainties by reviewing the surveillance footage taken at the scene. The trial court independently assessed the evidence and concluded that the jury's verdict was not against the great weight of the evidence.

Therefore, the trial court did not abuse its discretion by denying defendant's motion for a new trial because it acted within reasonable and principled outcomes when it was presented with sufficient evidence to establish that defendant assaulted, resisted, or opposed a police officer.

Affirmed.

/s/ Stephen L. Borrello
/s/ Kathleen Jansen
/s/ Christopher M. Murray