# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

VICTOR GRAHAM SHIVERS,

        Defendant-Appellant.

UNPUBLISHED
June 27, 2017

No. 330574
Wayne Circuit Court
LC No. 15-003301-01-FC

Before: SAWYER, P.J., and SERVITTO and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of assault with intent to commit murder, MCL 750.83, two counts of assault with a dangerous weapon (felonious assault), MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 30 to 45 years' imprisonment for each of the assault with intent to commit murder convictions, 10 to 15 years' imprisonment for each of the felonious assault convictions, and two years' imprisonment for the felony-firearm conviction. We affirm.

Anthony Roper and Jairus Thomas were walking down Wayburn Street in Detroit on March 29, 2105, when a green Ford Explorer drove past them, stopped, turned around, and came back toward them. When the vehicle got closer it stopped, defendant exited, raised two handguns with extended clips, pointed them at Anthony and Jairus, and opened fire. While Anthony and Jairus were fleeing from the gunfire, Jairus was shot in the right arm. When the gunfire stopped, the victims' neighbor, Ira Hawkins, and mother, Latrice Whigham, left their respective houses to investigate what had occurred. They, as well as Anthony, testified that they saw a green Ford Explorer, with a gun extended out of the window, drive back by and open fire once again.

Initially, Anthony and Jairus did not know who the shooter was. After the two shootings occurred, Jairus was transported to the hospital and Anthony went to his Aunt's house. While Anthony was at his Aunt's home, he logged onto Facebook. At the time, Anthony was aware of what the person that shot at him looked like, but had not identified him as defendant. Anthony was friends on Facebook with defendant's brother, which allowed him to see posts made by defendant's brother. Anthony testified that while he was on Facebook he saw a post by defendant's brother that included a photograph of defendant. Anthony immediately recognized

-1-

defendant as the person that shot at him and Jairus earlier that day. The name on the profile was "Vic Shivers" and the profile contained several photographs of defendant. Defendant also made a post indicating he was going to come back and shoot up Anthony and Jairus's house. The next morning at around 4:00 a.m., someone did, in fact, shoot up their home.

Anthony alerted the police of his discovery and Detective Lavon Howell began an investigation during which he discovered that defendant had a green Ford Explorer registered in his name. After Detective Howell arrested defendant for the shootings, a search of the green Ford Explorer turned up a box of ammunition that matched the shell casings found at the scene of the shootings, and a cellular telephone belonging to defendant which contained a video of defendant carrying a gun that matched the description of the gun used in the shootings.

Defendant first argues on appeal that the content of a Facebook post attributed to him at trial was inadmissible hearsay. We disagree.

To preserve a hearsay argument there must be an objection to the testimony during trial. *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011). Defendant objected to the testimony, but not on the grounds of hearsay. Because "an objection on one ground is insufficient to preserve an appellate argument based on a different ground[,]" this issue is unpreserved for our review. *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011). Generally, "[w]hen the issue is preserved, we review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). However, because the issue presented has not been preserved for review, we review the "unpreserved claim for plain error affecting defendant's substantial rights." *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In order to show that a defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

"'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "Hearsay is generally not admissible unless an exception to the rule applies." *People v Johnson*, 315 Mich App 163, 193; 889 NW2d 513 (2016). Certain statements made outside of trial, however, are by definition not hearsay pursuant to MRE 801(d). Specifically, "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is [] the party's own statement[.]" MRE 801(d)(2)(A). "A statement cannot be used as a party admission unless the party made the statement[,]" and it is the burden of the prosecution, as the proponent of the statement, to establish by a preponderance of the evidence that the statement was made by defendant. *Merrow v Bofferding*, 458 Mich 617, 633; 581 NW2d 696 (1998).

Defendant's primary argument is that because there was no evidence provided that he actually made the Facebook post stating he was going to go back and shoot up Anthony and Jairus's house, the testimony about that post could not be considered a party opponent admission subject to MRE 801(d)(2)(A). We disagree.

-2-

During direct examination, the prosecution asked Anthony about a Facebook post that Anthony had read that day. Anthony stated that the post revealed defendant's intent to return to Anthony's house and shoot it up again. There was no documentary evidence of that post submitted to the trial court. In other words, there was no screenshot or printout of the Facebook post containing the statement introduced as evidence. Rather, the only evidence of defendant's statement in his Facebook post was Anthony's testimony that he read it.

Defendant acknowledges that if the post was actually made by defendant, then it would be admissible as nonhearsay pursuant to MRE 801(d)(2)(A). The prosecution insists that the proper ground on which to answer this question is to determine if the evidence was properly authenticated pursuant to MRE 901. However, because the evidence was limited to Anthony's testimony, and not a screenshot or printout of the Facebook page, there was nothing to authenticate. Considering the law discussed *supra*, therefore, the proper analysis for admissibility of a party opponent admission is whether the prosecution proved by a preponderance of the evidence that the statement attributed to defendant by Anthony was actually made by defendant. *Merrow*, 458 Mich at 633. As noted, the relevant testimony established that Anthony recognized defendant from a photograph that led Anthony to a Facebook page for a "Vic Shivers." From there, Anthony looked at additional photographs on the Facebook profile that all contained images of defendant. Further, there was no evidence or testimony that the Facebook profile in question *did not* belong to defendant.

Logic would follow that a statement made on a profile with a person's name that contains pictures of that same person was made by that person. Even though it is technically possible that someone else started a Facebook profile in defendant's name, posted pictures of defendant on that profile, and then wrote the statement that Anthony read, that possibility did not render the evidence inadmissible. After all, "[i]t is axiomatic that proposed evidence need not tell the whole story of a case, nor need it be free of weakness or doubt. It need only meet the minimum requirements for admissibility." *People v McDade*, 301 Mich App 343, 353; 836 NW2d 266 (2013) (internal quotations omitted).

Therefore, given the testimony by Anthony, the prosecution properly proved by a preponderance of the evidence that defendant made the statement on the Facebook profile. See *Merrow*, 458 Mich at 633. Because the evidence met "the minimum requirements for admissibility[,]" the "weakness" or "doubt" associated with the evidence was best left for the jury to weigh during deliberations. *McDade*, 301 Mich App at 353. Because the statement was made by defendant and used against him at trial, it qualifies, as defendant admits, as a party opponent admission pursuant to MRE 801(d)(2)(A). And, because the statement was not hearsay, by definition, MRE 801(d)(2)(A), there was no error, plain or otherwise, made by the trial court in permitting Anthony's testimony. See *Carines*, 460 Mich at 763.

Defendant next argues, in his Standard 4 brief, that there was insufficient evidence to convict him of the two counts of assault with intent to murder. We disagree.

"We review de novo a challenge on appeal to the sufficiency of the evidence." *People v Henry*, 315 Mich App 130, 135; 889 NW2d 1 (2016), quoting *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the

prosecutor and determine 'whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013), quoting *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

"The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

On appeal, defendant only argues that there was insufficient evidence to convict him of the two counts of assault with intent to murder. A violation of MCL 750.83, and thereby a commission of assault with the intent to commit murder, requires proof of three separate elements: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *Ericksen*, 288 Mich App at 195-196, quoting *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005). "Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant had the requisite intent." *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014). Indeed, "[i]ntent to kill may be inferred from all the facts in evidence, including the use of a deadly weapon." *Henderson*, 306 Mich App at 11.

The record evidence provides a sufficient basis for a jury to determine that defendant committed two counts of assault with intent to murder. First, both Anthony and Jairus identified defendant as the person that shot at them. From that testimony, the jury was able to infer that not only did defendant assault Anthony and Jairus by pointing the gun at them and pulling the trigger, but that he intended to kill them due to his use of a dangerous weapon. See *Henderson*, 306 Mich App at 11. Second, their testimony was supported by corroborating testimony from Hawkins and Latrice, that the shooter was in a green Ford Explorer while shooting. Tying everything together was the testimony from Detective Howell that defendant owned a green Ford Explorer, had ammunition that matched shell casings found at the scene of the shootings, and was in a video carrying a gun similar to that described by the witnesses. Given this testimony, it was entirely reasonable for the jury to infer, beyond a reasonable doubt, that defendant was the person that exited the green Ford Explorer, aimed two guns at Anthony and Jairus, and started shooting. Because defendant used a gun to perpetrate the assault, the jury was permitted to infer his intent to kill Anthony and Jairus, see *id*., and provided that defendant had the intent to kill, the jury was permitted to infer that, had defendant's plan been successful, the crime committed by defendant would have been murder. See *Ericksen*, 288 Mich App at 195-196. That was sufficient evidence for a reasonable juror to determine that defendant committed two counts of assault with intent to murder, one each perpetrated against Anthony and Jairus. MCL 750.83.

Defendant urges this Court to hold that there was insufficient evidence largely based on Anthony's and Jairus's allegedly inconsistent identifications of defendant as the shooter. Defendant is correct that "it is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). However, "this Court has stated that positive identification by witnesses may be sufficient to support a conviction of a crime[,]" and that "[t]he credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). Although Anthony's initial description of the shooter was significantly different than defendant's actual appearance, and Jairus did not provide a description of the shooter until after seeing defendant's Facebook photographs, the jury chose to disregard those mitigating factors. Because the jury was entitled to make those credibility determinations, and not this Court, it is plain that defendant's argument on appeal is without merit, and we must defer to the jury's decision to believe Anthony and Jairus. See *id*.

Defendant, in a Standard 4 brief, next argues that photographs showing him in gang-related settings were inadmissible pursuant to MRE 403. While we agree that the photographs were unfairly prejudicial under MRE 403, we disagree that they were inadmissible because their probative value was not substantially outweighed by that unfair prejudice.

Because defendant failed to object to the evidence on the same grounds now offered on appeal, this issue is unpreserved. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Generally, "[w]hen the issue is preserved, we review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *Chelmicki*, 305 Mich App at 62. However, because the issue presented has not been preserved for review, this Court must review the "unpreserved claim for plain error affecting defendant's substantial rights." *Roscoe*, 303 Mich App at 648. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. In order to show that a defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

Generally, "[a]ll relevant evidence is admissible[.]" MRE 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Even where evidence is considered to be relevant, the evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." MRE 403. Notably, MRE 403 does not regulate evidence that is simply "prejudicial" because "[r]elevant evidence is inherently prejudicial." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995) (internal quotations omitted). Rather, "[i]t is only when the probative value is *substantially outweighed* by the danger of unfair prejudice that evidence is excluded." *Id*. Thus, "this Court must make two distinct inquires under the balancing test of MRE 403. First, this Court must decide whether introduction of [the] evidence at trial was unfairly prejudicial. Then, this Court must apply the balancing test and weigh the probativeness or relevance of the evidence against the unfair prejudice." *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (internal quotation marks omitted). "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would

be inequitable to allow use of the evidence." *People v Gipson*, 287 Mich App 261, 263; 787 NW2d 126 (2010), quoting *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). These concerns arise where "the tendency of the proposed evidence [is] to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Cameron*, 291 Mich App at 611 (internal quotation marks omitted). Additional concerns include "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *People v Watkins*, 491 Mich 450, 489; 818 NW2d 296 (2012) (internal quotation marks omitted).

In accordance with MRE 401 and 403, "[p]hotographic evidence is generally admissible as long as it is relevant and not unduly prejudicial." *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009). "Photographs are not excludable simply because a witness can orally testify about the information contained in the photographs." *Mills*, 450 Mich at 76. However, "[p]hotographs that are merely calculated to arouse the sympathies or prejudices of the jury are properly excluded, particularly if they are not substantially necessary or instructive to show material facts or conditions." *Id*. at 76-77, quoting *People v Eddington*, 387 Mich 551, 562-563; 198 NW2d 297 (1972). "The determination whether evidence should be excluded pursuant to MRE 403 is best left to the trial court's contemporaneous assessment." *Gipson*, 287 Mich App at 263.

Two photographs admitted into evidence were unfairly prejudicial. The first photograph shows a group of six black men, including defendant, standing in a line against a white background. All of the men in the photograph are wearing some combination of black and red. The man on the left is raising his middle finger to the camera, while the man on his immediate right is on a cellular telephone. The two men in the middle of the photograph are making symbols with their hands, which could only be described as "gang signs." The second picture contains 10 men posing outside. Two of the men are making hand signs at the camera, another is holding up two liquor bottles, and three of the other men are holding large sums of money. Indeed, defendant is the only person in the photograph sitting down on the ground, looking down into his lap at a pile of money. Defendant is not wearing a shirt in the photograph, and generally, it appears as if there is not a set clothing color scheme like the previous photograph.

When the photographs were introduced at trial, Anthony was asked to review them, identify them as the pictures he saw on defendant's Facebook page, and pick out defendant in the group photographs. On cross-examination, Anthony was confronted with the fact that his first statement to police, admittedly before seeing the Facebook photographs, did not match up with the physical appearance of defendant in the aforementioned photographs. Anthony maintained that, despite his previous statement, defendant, as he appeared in the photographs, was the man that shot at them.

Defendant argues that it was a violation of MRE 403 for the trial court to admit those photographs because they exhibit defendant as a member of a gang. As noted, *supra*, that analysis requires a two-part inquiry, beginning with considering "whether introduction of [the] evidence at trial was unfairly prejudicial." *Cameron*, 291 Mich App at 611. Evidence is unfairly prejudicial when it "will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *Gipson*, 287 Mich App at 263. Despite the argument

by the prosecution that it would take a "fairly street savvy [juror] to figure out that the individuals are flashing gang signs[,]" an objective view of the photographs clearly reveals that the two group photographs show a gang.

The prosecution also alleges that the photographs were admitted to support Anthony's and Jairus's identifications of defendant as the shooter. The photographs corroborated their testimony that they saw pictures on Facebook and connected them with defendant. While that may be true, and will be addressed more in-depth in the second prong of the analysis, *infra*, the issue is not that the prosecution chose to admit photographs to support the victims' identifications of defendant, but the actual photographs they chose. The record reveals that there was a separate picture on defendant's Facebook account that was also admitted into evidence that pictured defendant alone. Therefore, not only were the group photographs cumulative to that first picture and both victims' in-court identifications of defendant as the shooter, but they included the danger that the jury would consider the gang-related evidence in a manner that would "adversely affect [defendant]'s position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Cameron*, 291 Mich App at 611 (internal quotation marks omitted). It is logical that a juror might consider the gang photographs as proof that defendant was in a gang, fear defendant, and attribute "undue or preemptive weight" to the evidence in reaching their decision. *Gipson*, 287 Mich App at 263. As such, the two group photographs showing defendant in a gang type environment were unfairly prejudicial. The existence of unfair prejudice, however, does not end our analysis.

The next inquiry by this Court is to "apply the balancing test and weigh the probativeness or relevance of the evidence against the unfair prejudice." *Cameron*, 291 Mich App at 611. Recall that, "[i]t is only when the probative value is *substantially outweighed* by the danger of unfair prejudice that evidence is excluded." *Mills*, 450 Mich at 75. Pursuant to that balancing test, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Indeed, the photographs, ultimately, were highly probative. As noted, *supra*, the photographs were admitted to corroborate and support Anthony's and Jairus's identifications of defendant as the shooter. Despite the photograph of defendant alone that could have corroborated that Anthony actually saw a Facebook picture that led to his identification of defendant, the group photographs held higher probative value. Specifically, one of the biggest issues at trial was the identification of defendant. As noted, Anthony's identification was shaky, considering his description provided to the police after the shooting was significantly different than defendant's actual physical appearance. Further, Jairus did not even provide a physical description of the shooter before seeing the photographs. Given this shaky foundation for the victims's identification of defendant as the shooter, the group photographs proved highly probative because the photographs provided evidence that both Anthony and Jairus were able to look at photographs of a group of individuals that look similar to defendant and identify the man that shot them. More importantly, both Anthony and Jairus identified defendant as that person. The other photograph, which depicted defendant alone, would not have provided that same probative value, because there were no other men in the photograph that might have potentially confused Anthony and Jairus.

Given the great deal of probative value associated with the group pictures, we hold that the probative value of the evidence was not *substantially outweighed* by the danger of unfair prejudice. This is especially true because this Court has held that "[p]hotographs are not

excludable simply because a witness can orally testify about the information contained in the photographs." *Mills*, 450 Mich at 76. Just because Anthony and Jairus testified that they were able to pick defendant out of a group of people in a photograph, does not render the photographs inadmissible. *Id*. In sum, because the photographs were not "merely calculated to arouse the sympathies or prejudices of the jury" but instead were substantially necessary or instructive to show that Anthony and Jairus were able to properly identify defendant, the photographs were properly admitted. *Id*. at 76-77 (internal quotations omitted). Therefore, because there was no error in admitting the photographs, defendant cannot meet the plain error standard. *Carines*, 460 Mich at 763.

Defendant next asserts that he has the right to a new trial due to the ineffective assistance of trial counsel. We disagree.

In order to preserve a claim of ineffective assistance of counsel, a defendant is required to "move the trial court for a new trial or a *Ginther*[1] hearing." *People v Jackson*, 313 Mich App 409, 431; 884 NW2d 297 (2015). "Appellate review of an unpreserved argument of ineffective assistance of counsel, like this one, is limited to mistakes apparent on the record." *Johnson*, 315 Mich App at 174. "The denial of effective assistance of counsel is a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo." *People v Schrauben*, 314 Mich App 181, 189; 886 NW2d 173 (2016), quoting *People v Brown*, 279 Mich App 116, 140; 755 NW2d 664 (2008).

"Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions." *Schrauben*, 314 Mich App at 189-190, citing US Const, Am VI; Const 1963, art 1, § 20. "However, effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Id*. at 190. The United States Supreme Court has held that "in order to receive a new trial on the basis of ineffective assistance of counsel, a defendant must establish that 'counsel's representation fell below an objective standard of reasonableness' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Defendant first argues that trial counsel was ineffective for failing to object to the admission of improper character evidence. Defendant specifically challenges the admission of testimony from Anthony regarding the alleged 4:00 a.m. shooting that occurred after defendant made his Facebook post about another shooting, admission of the cellular telephone video of defendant holding a gun, and admission of the testimony of Detective Howell that defendant was on parole. The first question to consider, then, is whether the evidence was actually improper character evidence.

In Michigan, MRE 404(b) regulates the admissibility of evidence of "[o]ther crimes, wrongs, or acts[.]" Indeed, MRE 404(b)(1) sets out that "[e]vidence of other crimes, wrongs, or

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

acts is not admissible to prove the character of a person in order to show action in conformity therewith." The Michigan Supreme Court explained that "MRE 404(b) 'is a rule of legal relevance' that 'limits only one category of logically relevant evidence': '[i]f the proponent's only theory of relevance is that the other act shows defendant's inclination to wrongdoing in general to prove that the defendant committed the conduct in question, the evidence is not admissible.'" *People v Jackson*, 498 Mich 246, 258; 869 NW2d 253 (2015), quoting *People v VanderVliet*, 444 Mich 52, 61-63; 508 NW2d 114 (1993). "Underlying the rule is the fear that a jury will convict the defendant inferentially on the basis of his bad character rather than because he is guilty beyond a reasonable doubt of the crime charged." *Watkins*, 491 Mich at 468, quoting *People v Crawford*, 458 Mich 376, 384; 582 NW2d 785 (1998). MRE 404(b), however, "is not exclusionary, but is inclusionary, because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant's character." *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010). That "nonexhaustive list of reasons" includes "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case." MRE 404(b)(1).

The allegedly improper character evidence was introduced at trial in the following manner. First, as discussed *supra*, Anthony testified that defendant had posted on Facebook that he intended to return to the scene of the original crime and shoot a gun at Anthony and Jairus's house again. Anthony later testified that it was his understanding that defendant followed through with that threat, but later admitted that he was not at the house when the alleged shooting occurred at 4:00 a.m. the day after the original shootings. Second, during Detective Howell's testimony regarding his investigation of the original shootings, he was asked about the process he followed. Specifically, the prosecution asked why Detective Howell went to defendant's house after being informed by Anthony and Jairus that defendant was the shooter. Detective Howell testified that defendant was on parole and subject to unannounced home visits. Later during Detective Howell's testimony, when the trial court offered the jury the opportunity to ask questions, the jury asked for what crime defendant was on parole. The trial court told Detective Howell not to answer the question and instructed the jury to disregard the testimony that defendant was on parole. The trial court told the jury that defendant's status as a parolee was entirely irrelevant to the charged crimes. Third, Detective Howell provided testimony that his search of defendant's vehicle resulted in the discovery of defendant's cellular telephone. On that cellular telephone, Detective Howell found a video of defendant carrying a gun that matched the description provided by the witnesses of the gun carried by the shooter during the original shootings. Specifically, that the gun was a handgun with an extended clip. The video was played to the jury.

The video of defendant carrying the gun and the testimony about the 4:00 a.m. shooting were not implicated by MRE 404(b) because, "by its plain terms, MRE 404(b) only applies to evidence of crimes, wrongs, or acts 'other' than the 'conduct at issue in the case' that risks an impermissible character-to-conduct inference." *Jackson*, 498 Mich at 262. Defendant was charged with shooting at Jairus and Anthony with the intent to kill them, and then shooting again at their house shortly thereafter. That crime, necessarily, involved the presence of a gun and a drive-by type shooting. The challenged evidence provided information to the jury that defendant had previously possessed a gun that matched the description of the gun used in the shooting, and

defendant had, as part of the crime, promised to return to Anthony and Jairus's house and shoot at it again, and then subsequently did so. There was no intermediate inference of character" outside of the character that is necessarily associated with the crimes with which defendant was charged. As this Court held in *People v Houston*, 261 Mich App 463, 468; 683 NW2d 192 (2004), "[b]ecause the evidence was directly relevant to identifying [the] defendant as the [perpetrator] and did not involve an intermediate inference of character, MRE 404(b) was not implicated." Because MRE 404(b) specifically does not regulate character evidence associated with "conduct at issue in the case," its application was not triggered here. See *Jackson*, 498 Mich at 262. Indeed, this Court in *Houston*, 261 Mich App at 469, specifically held that evidence that a defendant previously possessed a gun that conformed to the crime was not implicated by MRE 404(b), because it involved the conduct at issue in the case.

Because the challenged evidence was not implicated by MRE 404(b), any objection by trial counsel to the introduction of that evidence would have been futile. We will not find trial counsel to be ineffective where, even if it had made an objection, that objection would have been futile. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

The same cannot be said with respect to testimony regarding defendant's parole status. Assuming without deciding that the reference to defendant as a parolee was improper character evidence, trial counsel should have objected but did not, and therefore trial counsel's performance was objectively unreasonable. Nevertheless, there are still not grounds to reverse defendant's convictions.

Defendant is unable to prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Jackson*, 313 Mich App at 431 (internal quotations omitted). First, the mention of defendant's parole was very brief and included only as a detail in Detective Howell's testimony regarding his investigation of the charged crimes. Second, there was a great deal of independent evidence connecting defendant to the charged crimes. Indeed, it would be unreasonable to assume that the jury relied on defendant's parole status to convict defendant when there was a plethora of other evidence otherwise connecting defendant to the crime. Lastly, the trial court specifically told the jury to disregard any testimony regarding the fact that defendant was on parole. The trial court was very clear in its discussion with the jury about the evidence, and even obtained a verbal response from one juror that they understood that defendant's parolee status was entirely unrelated to the charged crimes. "It is axiomatic that jurors are presumed to have followed their instructions." *Gayheart*, 285 Mich App at 210. The combined effect results in defendant's inability to prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Jackson*, 313 Mich App at 431 (internal quotations omitted). As such, the error by trial counsel does not require reversal. *Id*.

Defendant, in his Standard 4 brief, next asserts that trial counsel was ineffective for failing to interview and call as witnesses other people that could have testified as to his alibi. "Decisions regarding whether to call or question a witness are presumed to be matters of trial strategy." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). "Trial counsel's failure to call a witness is only considered ineffective

assistance if it deprived the defendant of a substantial defense." *Putman*, 309 Mich App at 248. "A substantial defense is one that could have affected the outcome of the trial." *Id.* "The defendant 'bears the burden of demonstrating both deficient performance and prejudice[;] the defendant [also] necessarily bears the burden of establishing the factual predicate for his claim.'" *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015), quoting *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

At trial, defendant's mother testified that defendant was at the hospital visiting his brother for the entire day of the shooting, and therefore, it would have been impossible for defendant to commit the crime. Defendant alleges that his other family members that were also at the hospital on the day of the shooting would have been able to support the testimony of defendant's mother that defendant was there as well. Defendant also argues that the only time he left the hospital was to see his parole officer and that his parole officer's testimony would have further supported his alibi. This argument by defendant is without merit. Defendant "necessarily bears the burden of establishing the factual predicate for his claim," *Cooper*, 309 Mich App at 80 (internal quotations omitted), and failed to do so where the record is absent of any evidence of what these people would have testified to if called as witnesses. Because defendant has failed to provide a factual predicate for his claim that trial counsel should have called additional alibi witnesses and this Court's review is limited to errors that are apparent on the record, there is no evidence to support defendant's claim that trial counsel's performance was objectively unreasonable. *Vaughn*, 491 Mich at 669.

Defendant next argues, in his Standard 4 brief, that trial counsel was ineffective for failing to properly cross-examine Anthony. "[H]ow to question witnesses [is] presumed to be [a] matter of trial strategy." *Putman*, 309 Mich App at 248. Defendant first asserts that trial counsel should have questioned Anthony regarding his prior inconsistent statement made during the preliminary examination. Specifically, defendant contends that at trial Anthony stated that he was not engaged in a fight before the shooting occurred, but at the preliminary examination he stated that he was. The testimony from Anthony at trial and the preliminary examination, however, were not actually inconsistent. Therefore, defendant failed to provide the factual predicate for his argument that trial counsel should have cross-examined Anthony with his prior inconsistent statements, because there was no inconsistency. *Cooper*, 309 Mich App at 80.

Defendant also asserts that trial counsel should have cross-examined Anthony with his prior inconsistent statements in the police report. Defendant focuses his argument primarily on Anthony's prior description of the shooter, which did not match the actual physical appearance of defendant. The record reveals that Anthony was thoroughly cross-examined on his differing descriptions. As such, defendant failed to establish that trial counsel failed to cross-examine Anthony on his inconsistent descriptions of the shooter, and therefore, failed to provide the factual predicate for his argument. *Id.*

Defendant next contends, in his Standard 4 brief, that trial counsel was ineffective for asserting an alternative defense that if defendant committed the shooting he did so in the "heat of passion" arising out of his brother's injuries. Defendant is correct that, during closing argument, trial counsel asserted that, even if the jury believed that defendant was the shooter, the crime would be mitigated by defendant's emotional reaction to the injuries suffered by his brother. However, as this Court has held, decisions relating to which defenses to assert at trial are matters

of trial strategy. *People v Henry*, 239 Mich App 140, 149; 607 NW2d 767 (1999). Those are decisions that this Court does not typically second-guess, especially where trial counsel's assertion of the inconsistent defenses ("heat of passion" versus alibi) was permitted. See *People v Cross*, 187 Mich App 204, 205-206; 466 NW2d 368 (1991). Indeed, the trial strategy behind having a fallback mitigation defense is clear. If the jury did not believe defendant's alibi argument, at least there was an alternate defense that would have mitigated the assault with intent to murder crime to a lesser included offense. As such, trial counsel's decision to assert two inconsistent defenses was valid trial strategy that this Court will not disturb on appeal. *Rockey*, 237 Mich App at 76-77.

Defendant next asserts, in his Standard 4 brief, that trial counsel was ineffective for failing to object to the admission of Detective Howell's testimony about the discovered ammunition when the actual ammunition was not admitted as evidence. Defendant's argument on this account, however, is belied by relevant case law holding that physical evidence is not required where witness testimony and other circumstantial evidence support a conviction. *Nowack*, 462 Mich at 400-403. Therefore, any objection by trial counsel to the lack of physical evidence of the ammunition would have been meritless, and as such, futile. This Court does not find trial counsel to be ineffective where any objection would have been futile. *Thomas*, 260 Mich App at 457.

Defendant lastly asserts, in his Standard 4 brief, that trial counsel was ineffective for providing defendant poor advice. Specifically, defendant argues that trial counsel improperly advised defendant that he should not testify at trial. Defendant, however, has once again failed to create a factual predicate for his argument, as he is required to do, *Cooper*, 309 Mich App at 80, because, as is evident from the trial transcript, the decision not to testify was his own decision. Further, the record revealed that trial counsel's advice to defendant to not testify was founded on valid trial strategy. Indeed, trial counsel made specific note of the fact that, if defendant were to testify, his prior convictions for crimes involving theft or dishonesty would come into the record. It was part of trial counsel's strategy, then, to encourage defendant not to testify. This Court will not disturb that viable trial strategy on appeal. *Rockey*, 237 Mich App at 76-77.

Defendant also asserts in his Standard 4 brief that trial counsel's cumulative errors amounted to error requiring reversal. "[T]he cumulative effect of a number of minor errors may in some cases amount to error requiring reversal." *People v Cooper*, 236 Mich App 643, 660; 601 NW2d 409 (1999). However, "[a]bsent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). As discussed, *supra*, the only error actually proved was that trial counsel should have objected to testimony provided by Detective Howell that defendant was on parole. The analysis provided, however, revealed that the error did not require reversal. As such, because there is no other "minor error" to combine with trial counsel's failure to object to the evidence that defendant was on parole, there can be no cumulative effect. See *id*.

Affirmed.

/s/ David H. Sawyer
/s/ Deborah A. Servitto
/s/ Michael J. Riordan
