*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 12, 2019

Plaintiff-Appellee,

v

No. 341971
Wayne Circuit Court
LC No. 16-009815-01-FC

MONDALE JONES,

Defendant-Appellant.

Before: FORT HOOD, P.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of two counts of assault with intent to commit murder (AWIM), MCL 750.83; one count of felon in possession of a firearm (felon-in-possession), MCL 750.224f; and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to concurrent prison terms of 25 to 50 years for each of his AWIM convictions and two to five years for his felon-in-possession conviction, to be served consecutively to the statutory 2-year prison term for each of his felony-firearm convictions. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Early in the morning of September 3, 2016, defendant and Kevin McCotter drove in McCotter's car to Beaconsfield Street in Detroit to visit Ja'tara Cole and Lateja Solomon. McCotter, who possessed a concealed pistol license, had a handgun stored in his car. At about 1:30 a.m., while the foursome was conversing on the street, Cole was approached by her neighbor, Dashanae Doctor, and they began to argue. When defendant intervened on Cole's behalf, a fight broke out between defendant and McCotter, on the one hand, and Doctor and Doctor's two minor brothers, TJ-1 and TJ-2, on the other.

Solomon testified that she and Cole went to McCotter's nearby vehicle, from which Solomon retrieved McCotter's handgun, and that she then returned to where the others were

-1-

fighting, intending to give the handgun to McCotter. According to Solomon, Cole, Doctor, and TJ-1, defendant took the handgun from Solomon and fired six times towards Doctor and TJ-1.[1] TJ-1 was shot in the side and another bullet grazed his knee, although he was not seriously injured. Defendant, however, testified that Solomon handed him the gun and that he fired at the ground. He also testified that TJ-1 was armed with a gun during the fight and had pointed it at him.

After the shooting, defendant and McCotter left in McCotter's car. McCotter testified that defendant returned his handgun to him as they drove away and admitted to having fired it, but did not say that TJ-1 had been armed with a gun or that he had acted in self-defense. Cole and Solomon returned to their home and Doctor assisted TJ-1 back to their home. TJ-1 then went over to Cole's house, armed with a gun and accompanied by Doctor and their mother, but no further violence occurred. Cole, Solomon, Doctor, and TJ-1 all spoke with police and identified defendant as the shooter.

At trial, defendant argued that he fired the handgun in self-defense. He testified that TJ-1 had pointed a gun at him, that he was in fear for his life when Solomon handed him McCotter's handgun, and that he fired it into the ground, intending to scare everyone and to create a distraction that would enable him and McCotter to escape.

Defendant was convicted and sentenced as described. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he is entitled to a new trial because his counsel failed to request a due-diligence hearing or a missing-witness jury instruction after the prosecution failed to produce Detroit Police Officer Pamela Smith as a witness. We disagree. Defendant did not move for a new trial or for a *Ginther*[2] hearing before either the trial court or this Court. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Our review is therefore limited to mistakes apparent on the record. *People v Johnson*, 315 Mich App 163, 174; 889 NW2d 513 (2016). "The denial of effective assistance of counsel is a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo." *People v Schrauben*, 314 Mich App 181, 189; 886 NW2d 173 (2016), quoting *People v Brown*, 279 Mich App 116, 140; 755 NW2d 664 (2008).

"Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions." *Schrauben*, 314 Mich App at 189-190, citing US Const, Am VI; Const 1963, art 1, § 20. "However, effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Schrauben*, 314 Mich App at 190. The United States Supreme Court has held that "in order to receive a new trial on the basis of ineffective assistance of counsel, a defendant must establish that 'counsel's representation fell

---

[1] The record reflects that TJ-2 had left the fight and had walked back toward his home.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

below an objective standard of reasonableness' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). That is, "[w]hen reviewing defense counsel's performance, the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *People v Jackson*, 313 Mich App 409, 431; 884 NW2d 297 (2015), quoting *Strickland*, 466 US at 690. "Next, the defendant must show that trial counsel's deficient performance prejudiced his defense—in other words, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Jackson*, 313 Mich App at 431, quoting *Vaughn*, 491 Mich at 669.

This Court will not find trial counsel to be ineffective when an objection would have been futile, nor will it second-guess matters of trial strategy. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004); *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). "The defendant 'bears the burden of demonstrating both deficient performance and prejudice[;] the defendant [also] necessarily bears the burden of establishing the factual predicate for his claim.' " *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015), quoting *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (alteration in *Cooper*).

Defendant argues that, when the prosecution failed to produce Officer Smith for trial, defense counsel should have requested a due-diligence hearing and a missing-witness jury instruction. But while such requests may have been appropriate, and indeed may have been granted, we conclude that defendant cannot demonstrate prejudice.

"MCL 767.40a(1) requires that the prosecution attach to the information a list of eyewitnesses and witnesses who might be called at trial." *People v Duenaz*, 306 Mich App 85, 103; 854 NW2d 531 (2014). "The prosecution is not required to produce at trial the witnesses listed with the information, but, under MCL 767.40a(2), the prosecution has a continuing duty to disclose further res gestae witnesses as they become known." *People v Everett*, 318 Mich App 511, 520-521; 899 NW2d 94 (2017) (citation omitted). "Then, not less than 30 days before trial, the prosecution must provide a defendant with a list of endorsed witnesses whom the prosecution 'intends to produce' at trial." *Id*. at 521, quoting MCL 767.40a(3). "A prosecutor who endorses a witness under MCL 767.40a(3) is obliged to exercise due diligence to produce that witness at trial." *People v Eccles*, 260 Mich App 379, 388; 677 NW2d 76 (2004). "Further, MCL 767.40a(4) requires a showing of good cause for removing a witness from the prosecution's witness list." *Duenaz*, 306 Mich App at 104; *Everett*, 318 Mich App at 518. If the trial court finds a lack of due diligence, it may instruct the jury that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case. *Eccles*, 260 Mich App at 388.

At the beginning of the fourth day of trial, the prosecution announced that it would not be calling Officer Smith as a witness. While defense counsel had waived the presence of certain other witnesses on the prosecution's witness list, it did not waive the presence of Officer Smith. The record regarding the circumstances of Officer Smith's absence at trial is quite limited; indeed, the only reason provided on the record was that Officer Smith was on furlough.

Because Officer Smith was an endorsed witness,[3] the prosecution had the burden to produce her as a witness at trial. *Eccles*, 260 Mich App at 388. Further, because defense counsel was not willing to waive Officer Smith's presence at trial, the prosecution was required to "make a showing of good cause to delete [her] from the list." *Everett*, 318 Mich App at 518. A failure to exercise due diligence in obtaining the presence of the witness is not considered good cause. *Eccles*, 260 Mich App at 388. On this record, it appears that had defense counsel requested a due-diligence hearing, the request may well have been granted, although we are unable to determine from the existing record whether that inquiry would have necessarily or probably resulted in a missing-witness instruction.

Regardless of the reasonableness of defense counsel's failure to challenge the prosecution's due diligence in attempting to secure Officer Smith's testimony, defendant has failed to show prejudice. *Jackson*, 313 Mich App at 431. As noted, defendant bears the burden of proving the factual predicate for his arguments on appeal. *Cooper*, 309 Mich App at 80. Here, the record contains no information regarding what the content of Officer Smith's testimony would have been. Defendant suggests that Officer Smith's testimony would have undermined TJ-1's credibility. In support of that argument, defendant cites the trial testimony of Officer Frank Sanna, who was Officer Smith's partner, in which he stated that TJ-1 had provided differing accounts over the course of several interviews on the day of the crime. Defendant presumes that Officer Smith would have testified similarly. Officer Sanna also stated, however, that although Officer Smith was his partner, she was not necessarily involved in all of the interviews. Moreover, the jury had already been provided with Officer Sanna's testimony and, consequently, was aware that TJ-1 had provided differing accounts over the course of the investigation. Even assuming that Officer Smith would have testified that she had also heard differing accounts from TJ-1, such testimony would have been merely cumulative of Officer Sanna's. Failure to present testimony that is cumulative of other testimony admitted at trial is rarely outcome-determinative. See *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

Moreover, even if Officer Smith had testified and further undermined TJ-1's credibility, defendant does not argue that Officer Smith's testimony would have undermined the credibility of the three other witnesses who had also seen defendant shoot at TJ-1 and Doctor. We conclude that defendant has failed to carry his burden of proving "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 694; *Jackson*, 313 Mich App at 431.[4]

---

[3] Although the prosecution contends that the record is unclear regarding whether Officer Smith was an "endorsed" witness, the only prosecution witness list contained in the lower court record lists Officer Smith as a witness, and the box next to her name is checked to indicate that she was an endorsed witness under MCL 767.40a(3). See *Everett*, 318 Mich App at 519 (discussing a similarly worded witness list).

[4] As noted, we cannot determine on the existing record that *if* defense counsel had requested a due-diligence hearing, the results of that hearing would have supported a further request for a

## III. SUFFICIENCY OF THE EVIDENCE

Defendant also argues that there was insufficient evidence to sustain his AWIM convictions. We disagree. We review de novo a challenge to the sufficiency of the evidence. *People v Henry*, 315 Mich App 130, 135; 889 NW2d 1 (2016), quoting *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the prosecutor and determine 'whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013), quoting *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

There is sufficient evidence for a guilty verdict when "a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *Tennyson*, 487 Mich at 735. "The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016). Any and all conflicts that arise in the evidence must be resolved "in favor of the prosecution." *Henderson*, 306 Mich App at 9. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

The elements of AWIM are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. *People v Anderson*, 322 Mich App 622, 632; 912 NW2d 607 (2018). Here, defendant only challenges the intent to kill element. "This Court has consistently observed that because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *Id*. at 633 (quotation marks omitted). A defendant's intent to kill can be inferred "from any facts in evidence, including the nature, extent, and location of [] wounds," *Ericksen*, 288 Mich App at 196, as well as "the use of a deadly weapon" and "a motive to kill, along with flight and lying, which may reflect a consciousness of guilt." *Henderson*, 306 Mich App at 11 (citation omitted).

---

missing-witness instruction. In any event, the evidence against defendant was overwhelming; it is unlikely that an instruction allowing the jury to infer that Officer Smith's testimony would have been unfavorable to the prosecution's case—especially in light of the fact that the jury actually heard testimony from Officer Sanna that was unfavorable to the prosecution's case— would have altered the outcome. Defendant has not demonstrated prejudice.

The evidence offered at trial supported the jury's conclusion that defendant intended to kill TJ-1 and Doctor when he fired the handgun. Defendant and McCotter engaged in a physical altercation with Doctor, TJ-1, and TJ-2. In the midst of the fight, defendant obtained a handgun, pointed it at the area where TJ-1, Doctor, and McCotter were fighting; and fired six bullets, striking TJ-1 twice. Further testimony established that TJ-1 and Doctor were close enough together that defendant's shots could have hit either of them.

Again, only minimal circumstantial evidence is required to prove defendant's intent to kill. *Anderson*, 322 Mich App at 633. Defendant's use of a deadly weapon gives rise to an inference that he intended to kill TJ-1 and Doctor. *Henderson*, 306 Mich App at 11. Further, TJ-1 was wounded in the torso, which contains important bodily organs. The nature of the wound inflicted on TJ-1 and its location permitted the jury to infer that defendant intended to kill when he shot the handgun. *Ericksen*, 288 Mich App at 196. Additionally, the fact that defendant fired the weapon six times supports the inference that he intended that someone be struck by one or more of the bullets. Defendant, despite his argument to the contrary, also had a motive to kill, even though it may not have been a particularly compelling one. See *Henderson*, 306 Mich App at 11. The evidence showed that defendant was engaged in a serious physical fight, and the jury could have inferred that defendant intended to win and end that fight by shooting and killing TJ-1 and Doctor.

Further, although defendant argues that it was McCotter, and not defendant, who brought the handgun to Beaconsfield Street, premeditation is not an element of AWIM. *Anderson*, 322 Mich App at 632. From the evidence introduced by the prosecution, the jury could have properly concluded that defendant developed the intent to kill TJ-1 and Doctor during the fight.

For these reasons, there was sufficient evidence to support defendant's AWIM convictions. *Anderson*, 322 Mich App at 632.

## IV. DEFENDANT'S STANDARD 4 BRIEF

In his Standard 4 brief,[5] defendant argues an array of additional issues, largely focused on what he believes to be clear evidence that TJ-1, Doctor, and Solomon committed perjury; that the prosecution knowingly offered perjured testimony at trial; and that defense counsel was ineffective in failing to confront the perjured testimony. We disagree in all respects.

### A. PERJURY

The majority of defendant's arguments concern his assertion that TJ-1, Doctor, and Solomon committed perjury. A defendant seeking appellate review bears the burden of "furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated." *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000); see also *People v Bass*, 317 Mich App 241, 272-273; 893 NW2d 140 (2016) (citation omitted)

---

[5] A supplemental appellate brief filed in propria persona by a criminal defendant under Supreme Court Administrative Order 2004-6, Standard 4.

(noting that a defendant alleging perjury bears the burden of proving the testimony was actually false). However, defendant provides no evidence of perjury, relying instead on his own opinion, conjecture,[6] and the mere fact that other witnesses' testimony differed from his. Moreover, and while defendant additionally argues that Solomon's perjury can be proven by the fact that she received a plea deal in return for her testimony, the jury was informed of the circumstances that led to her offering her testimony. Evidence that impacts the credibility of a witness is not synonymous with evidence of perjury. See *Bass*, 317 Mich App at 275 (holding that while "the existence of a prior inconsistent statement" impeaches a witness's credibility, it "is not evidence that [a witness]'s trial testimony was actually false"). Because there is no support for defendant's argument that multiple witnesses perjured themselves, we also find defendant's claims of prosecutorial misconduct and ineffective assistance of counsel related to the allegedly perjured testimony to be without merit.

## B. ACTUAL INNOCENCE

Defendant also argues that he is entitled to relief because he is actually innocent of the AWIM charges. This argument is also premised on the alleged perjury of multiple witnesses. For the reasons already discussed, defendant's failure to provide any evidence to prove those claims is fatal to his arguments on appeal. *Bass*, 317 Mich App at 275. Additionally, we note that this argument is not properly before us. Caselaw and court rules cited by defendant in support of this argument concern motions for postconviction relief or petitions for a writ of habeas corpus. See e.g., *Schlup v Delo*, 513 US 298; 115 S Ct 851; 130 L Ed 2d 808 (1995); *Souter v Jones*, 395 F 3d 577 (CA 6, 2005); see also MCR 6.500, *et seq*. Defendant remains free to raise this issue by a motion for relief from judgment following an appeal or by a petition for habeas corpus, after he has exhausted his direct appeals.

## C. SENTENCING

Finally, defendant argues that he was improperly sentenced as a second-offense habitual offender. Our review of the record reflects that, although the prosecution filed a habitual offender notice when filing the felony information, defendant was not sentenced as a second-offense habitual offender. Therefore, there is no relief that we can grant to defendant on this claim.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra

---

[6] Defendant specifically argues, albeit without evidence of his marksmanship skills, that if he had fired the handgun with the intent to kill TJ-1 or Doctor, he would not have missed.