*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ORBY JR. HOOKER, III,

        Defendant-Appellant.

UNPUBLISHED
December 26, 2019

No. 344510
Wayne Circuit Court
LC No. 17-008906-01-FH

Before: BECKERING, P.J., and BORRELLO and M. J. KELLY, JJ.

PER CURIAM.

A jury convicted defendant, Orby Jr. Hooker, III, of assault by strangulation or suffocation, MCL 750.84(1)(b), and assault with a dangerous weapon (felonious assault), MCL 750.82.[1] The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to concurrent prison terms of 38 months to 15 years for the assault by strangulation conviction and 2 to 6 years for the felonious assault conviction. He appeals as of right. We affirm defendant's convictions, but vacate his sentence and remand for resentencing.

## I. FACTUAL BACKGROUND

In July 2017, Cedrick Stringer resided with his girlfriend, Timikia Brooks, and their two children at a home located on 19374 Telegraph Road, in Detroit, Michigan.[2] On July 21, 2017,

---

[1] Defendant was tried with co-defendant, Dwylar Hooker. Dwylar was charged with one count of unarmed robbery, MCL 750.530. Dwylar was acquitted of this charge. Defendant was also charged with, but ultimately acquitted of, a separate count of felonious assault, one count of armed robbery, MCL 750.529, and four counts of possession of a firearm in the commission of a felony (felony-firearm), MCL 750.227b.

[2] The record reflects some dispute regarding whether Stringer resided in the subject home in July 2017. Stringer testified that he did, but Brooks testified that Stringer had moved out on April 12, 2017. Ultimately, this discrepancy is irrelevant to the issues on appeal.

-1-

Stringer left their home after getting into an argument with Brooks. When Stringer returned later that day, he discovered that Brooks had installed new locks and a new alarm system. The next day, at about 4:00 p.m., Stringer returned to the home after work. Defendant, who is Brooks's brother, and Dwyler Hooker, Brooks's sister, were inside the home. When Stringer tried to walk through the front door of the home, defendant pushed Stringer and told Stringer he could not come inside the house. Stringer went to his car to telephone the police. While Stringer was waiting for the police to arrive, Stringer's neighbor, Matthew Borodich, walked by and got into the passenger seat of the vehicle to talk to Stringer.

While Borodich and Stringer were sitting in the car, defendant, Dwylar, and Brooks' older brother Larry Hooker approached the vehicle in a hostile manner. Both Larry and defendant were armed. Stringer began recording the encounter with his cellular telephone. Defendant opened the passenger door to the vehicle and started reaching over Borodich in an attempt to grab Stringer. A fight ensued between defendant and Borodich and defendant was successful in removing Borodich from the vehicle at gunpoint. Defendant entered Stinger's vehicle through the passenger's side door, put his right arm around Stringer's throat, and dragged him over the center console, through the passenger's side of the car, out of the door, and onto the ground. Larry grabbed Stringer's cellular telephone and smashed it on the ground. While defendant still had Stringer in a chokehold, defendant instructed Dwylar to "[g]et his chain," and Dwylar grabbed a chain off Stringer's neck. Defendant eventually released Stringer. Defendant was charged and a jury convicted defendant of the previously identified charges. Specifically, defendant was convicted of assault by strangulation with regard to Stringer and felonious assault against Borodich.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the record evidence was insufficient to support his conviction of assault by strangulation. We disagree. "We review de novo a challenge on appeal to the sufficiency of the evidence." *People v Henry*, 315 Mich App 130, 135; 889 NW2d 1 (2016) (quotation marks and citation omitted).

"To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013) (quotation marks and citation omitted). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). " 'The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict.' " *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

To convict defendant of assault by strangulation, the prosecution had to prove beyond a reasonable doubt that defendant assaulted Stringer by strangulation or suffocation. MCL

750.84(1)(b). An assault is " 'an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery.' " *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011), quoting. *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). A battery is "an incidental, uncontested and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id*., quoting *Starks*, 473 Mich at 234 (quotation marks and citation omitted). Strangulation means "intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person." MCL 750.84(2). The trier of fact may reasonably infer intent from all the facts and circumstances in a case. *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001).

Defendant essentially concedes that he assaulted Stringer when he dragged him out of the vehicle, but argues that the evidence was insufficient to prove that he intended to strangle or suffocate Stringer because he did not continue to apply pressure to Stringer's neck after Larry obtained Stringer's cellular telephone. This argument is without merit.

Stringer testified that defendant grabbed him by the neck and dragged him over the center console and through the front passenger-side door of the car. Defendant continued to apply pressure to Stringer's neck until Stringer released his cellular telephone. Stringer testified that "he couldn't breathe at all." Borodich corroborated Stringer's account of the incident, testifying that he witnessed defendant place Stringer in a "chokehold," which caused Stringer's face to turn red. This testimony is direct evidence that defendant intentionally impeded Stringer's breathing by applying pressure to Stringer's neck. MCL 750.84(2). The jury credited the testimony of Stringer and Borodich and this Court will not interfere with the fact-finder's determinations regarding credibility. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). Defendant cites no authority for his implied assumption that he had to hold Stringer in a chokehold for a particular length of time before the jury could find that such conduct constituted strangulation. Taken in the light most favorable to the prosecution, the evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that defendant assaulted Stringer by strangulation. See *Smith-Anthony*, 494 Mich at 676.

Defendant also argues that the evidence was insufficient to sustain his conviction of assault by strangulation because Stringer was an unreliable witness who gave inconsistent testimony at trial regarding the placement of defendant's hands when defendant pulled him out of the vehicle. At trial, Stringer testified that defendant had one arm around his neck when defendant dragged him out of his car. On cross-examination, Stringer was questioned about his preliminary examination testimony, in which he had stated that one of defendant's arms was across his chest. Defendant implies on appeal that Stringer's preliminary examination testimony that defendant had his arm across Stringer's chest, not his neck, impeached Stringer's trial testimony beyond all probative value. Defendant misrepresents the record.

At the preliminary examination, in addition to saying that defendant had one arm across his chest, Stringer testified that defendant had "one arm come across the neck." This statement from the preliminary examination was also read into the trial record during cross-examination of Stringer. Stringer consistently stated that defendant put one arm around his neck, although he was unsure where defendant placed his other hand. The record belies defendant's argument that Stringer provided inconsistent testimony regarding where defendant grabbed him. Furthermore,

even if Stringer had given inconsistent testimony, it was the jury's role to determine what, if any, of Stringer's testimony it would believe and how much weight it would give such testimony. See *Unger*, 278 Mich App at 222. The jury apparently credited Stringer's, and Borodich's, account of how defendant put him in a chokehold, and we see no reason to second-guess the jury's credibility assessment. See *id*.

Next, defendant argues that the evidence was insufficient to support his conviction of felonious assault against Stringer. This issue is moot because the jury acquitted defendant of felonious assault against Stringer, and no further relief is available. *People v Billings*, 283 Mich App 538, 548; 770 NW2d 893 (2009) ("An issue is moot if an event has occurred that renders it impossible for the court, if it should decide in favor of the party, to grant relief.") (quotation marks and citation omitted). The jury did convict defendant of felonious assault with respect to Borodich. However, even if we assume that defendant intended to argue on appeal that the evidence was insufficient to convict him of felonious assault against Borodich, defendant's argument fails nonetheless.

"The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007) (quotation marks and citation omitted). Defendant argues there was insufficient evidence to support his conviction of felonious assault because the prosecution failed to establish that defendant possessed a dangerous weapon. However, Stringer and Borodich testified that defendant had a gun. Borodich further testified that defendant pointed the gun directly at him. This testimony is direct evidence that defendant was in possession of a dangerous weapon, supporting the jury's verdict.

Defendant further contends that the jury found him to be unarmed because it acquitted him of the felony-firearm charges, and that, because of this acquittal, and considering that the prosecutor did not present any evidence that defendant was armed with a dangerous weapon other than a gun, the evidence was insufficient to support a felonious assault conviction. In other words, because the jury found defendant was not armed for purposes of the felony-firearm charges, defendant could not have been armed for purposes of felonious assault. Defendant's argument is without merit.

"Juries are not held to any rules of logic nor are they required to explain their decisions." *People v Vaughn*, 409 Mich 463, 466; 295 NW2d 354 (1980). As our Supreme Court further explained in *Vaughn*,

> The ability to convict or acquit another individual of a crime is a grave responsibility and an awesome power. An element of this power is the jury's capacity for leniency. Since we are unable to know just how the jury reached their conclusion, whether the result of compassion or compromise, it is unrealistic to believe that a jury would intend that an acquittal on one count and conviction on another would serve as the reason for defendant's release. These considerations change when a case is tried by a judge sitting without a jury. But we feel that the mercy-dispensing power of the jury may serve to release a defendant from some of the consequences of his act without absolving him of all responsibility. [*Id*. (citation omitted).]

-4-

Absent jury confusion, misapprehension of the trial court's instructions, or an impermissible compromise, "inconsistent verdicts within a single jury are permissible." See *People v Putnam*, 309 Mich App 240, 250-251; 870 NW2d 593 (2015). Defendant has made no effort to establish any of the circumstances that would render an inconsistent verdict suspect. Considering the *Vaughn* Court's explanation and that trial testimony clearly supported that defendant possessed a gun while assaulting Borodich, we conclude that defendant is not entitled to reversal of his felonious assault conviction.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant argues that his counsel was ineffective for failing to object when the trial court improperly assigned 25 points to OV 12 for three or more contemporaneous felonious criminal acts against a person. We agree. Because defendant did not move for a new trial or a *Ginther*[3] hearing, this issue comes to this Court unpreserved. *People v Jackson*, 313 Mich App 409, 431; 884 NW2d 297 (2015). Our review is limited to mistakes apparent on the record. *Id.* "The denial of effective assistance of counsel is a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo." *People v Schrauben*, 314 Mich App 181, 189; 886 NW2d 173 (2016) (quotation marks and citation omitted).

The proper interpretation and application of the sentencing guidelines is a legal question that this Court reviews de novo. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). "A trial court's factual determinations at sentencing are reviewed for clear error and need only be supported by a preponderance of the evidence." *People v Carter*, 503 Mich 221, 226; 931 NW2d 566 (2019). "The trial court's findings are clearly erroneous if, after we have reviewed the entire record, we are definitely and firmly convinced that it made a mistake." *People v Armstrong*, 305 Mich App 230, 242; 851 NW2d 856 (2014). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

The United States Constitution and the Michigan Constitution guarantee a defendant's right to counsel. US Const, Am VI; Const 1963, art 1, § 20. This right to counsel encompasses " 'the right to the effective assistance of counsel.' " *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984) (quotation marks and citation omitted). "[E]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Schrauben*, 314 Mich App at 190. "To establish that a defendant's trial counsel was ineffective, a defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Id.*

---

[3] *People v Ginther*, 390 Mich 436, 442-443, 212 NW2d 922 (1973).

In order to score OV 12, "[u]nder MCL 777.42, the trial court had to determine whether defendant engaged in any contemporaneous felonious criminal acts." *People v Bemer*, 286 Mich App 26, 32; 777 NW2d 464 (2009) (quotation marks omitted). "A felonious criminal act is defined to be contemporaneous if the act occurred within 24 hours of the sentencing offense and will not result in a separate conviction." *Id*. at 32-33, citing MCL 777.42(2)(a). MCL 777.42(1)(a) provides that 25 points are assigned when "[t]hree or more contemporaneous felonious criminal acts involving crimes against a person were committed." The trial court must assess 10 points for OV 12 when "two or more contemporaneous felonious acts involving crimes against a person were committed." MCL 777.42(1)(b). "[W]hen scoring OV 12, a court must look beyond the sentencing offense and consider only those separate acts or separate behavior that did not establish the sentencing offense." *People v Light*, 290 Mich App 717, 723; 803 NW2d 720 (2010). Therefore, offenses for which defendant is convicted should not be considered when assessing OV 12. *Id*. at 726.

The jury convicted defendant of two felonies: assault by strangulation and felonious assault. Those offenses could not be used to score OV 12. MCL 777.42(2)(a). Defendant was charged with, but ultimately acquitted of, a separate count of felonious assault, one count of armed robbery, and four counts of felony-firearm. In assessing 25 points for OV 12, it appears that the trial court considered defendant's acquitted offenses. However, only "crimes against a person" can be used to assess 25 points for OV 12. MCL 777.42(1)(a). Indeed, by statute, the trial court could not consider the four acquitted counts of felony-firearm. MCL 777.42(2)(b)[4]. No evidence was presented at trial that suggested defendant had engaged in any other criminal activity within 24 hours of the charged offenses. Therefore, the armed robbery and the felonious assault charges were the only two charges that the trial court could consider in assessing points to OV 12. As a result, the evidence only supported the conclusion that defendant had engaged in two contemporaneous felonious acts that could be used to assess points for OV 12. MCL 777.42(1)(b). Therefore, OV 12 could not have been assessed 25 points. Furthermore, because 25 points should not have been assessed for OV 12, defense counsel's failure to object fell below objective standards of reasonableness.

To establish ineffective assistance of counsel, defendant must also show that but for defense counsel's deficient performance, defendant would have received a different sentence. *Vaughn*, 491 Mich at 670. The trial court sentenced defendant to a minimum of 38 months for his assault by strangulation conviction. A change in OV 12 from 25 points to 10 points would alter the guidelines calculation for this conviction from using OV Level V to OV Level IV, resulting in a reduction of the guidelines minimum sentence range from 38 to 95 months to 34 to 83 months. MCL 777.65. Because a change in OV 12 from 25 points to 10 points reduces the minimum sentencing guidelines range, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 694. Thus, the second prong of *Strickland* is satisfied. Because the trial court based

---

[4] MCL 777.42(2)(b) provides that "[a] violation of [] MCL 750.227b, should not be considered for scoring this variable." MCL 750.227b is the statute governing possession of a firearm in the commission of a felony (felony-firearm).

defendant's sentence on an inaccurate calculation of the guidelines ranges, he is entitled to resentencing. *People v Francisco*, 474 Mich 82, 92; 711 NW2d 44 (2006).[5]

We affirm defendant's convictions, vacate his sentence, and remand for resentencing in a manner consistent with this opinion. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Michael J. Kelly

---

[5] Although decided after defendant's original sentencing and not raised or addressed by either party on appeal, when deciding the appropriate assessment of points to OV 12 on remand, the trial court should consider our Supreme Court's recent decision in *People v Beck*, ___ Mich ___; ___ NW2d ___ (2019) (Docket No. 152934), to determine the propriety of using defendant's acquitted charges for purposes of OV 12. *Beck* did not involve guidelines scoring. However, the *Beck* Court did state,

> When a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-evidence standard. But when a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent. To allow the trial court to use at sentencing an essential element of a greater offense as an aggravating factor, when the presumption of innocence was not, at trial, overcome as to this element, is fundamentally inconsistent with the presumption of innocence itself. [*Beck*, ___ Mich at ___; slip op at 18-19.]

Granted, the trial court used defendant's acquitted conduct to score OV 12, not as an aggravating factor to enhance his sentence, as did the trial court in *Beck*. However, *Beck* reminds us that defendants charged with crimes are presumed innocent until found guilty; if the jury acquits them, the presumption of innocence remains. There is no intermediary status of guilty by a preponderance of the evidence. Here, the prosecution charged defendant with armed robbery and felonious assault, but the jury acquitted him of these charges, leaving intact defendant's presumption of innocence as to these charges. Thus, the question on remand is whether the logic of *Beck* allows the trial court to use behavior underlying these charges to score OV 12.